UNITED STATES, Appellee

v.

Eric B. WHITE, Senior Airman
U.S. Air Force, Appellant.

No. 93–0493.
CMR No. 29496.

U.S. Court of Military Appeals.

Argued March 15, 1994.

Decided Sept. 16, 1994.

For Appellant: *Captain Robert I. Smith* (argued); *Lieutenant Colonel Frank J. Spinner* (on brief); *Colonel Jay L. Cohen, Colonel Terry J. Woodhouse, Captain J. Knight Champion, III.*

For Appellee: *Captain Jules D. Silberberg* (argued); *Colonel Richard L. Purdon, Colonel Jeffery T. Infelise, Captain Thomas E. Wand* (on brief); *Lieutenant Colonel Thomas E. Schlegel.*

*Opinion of the Court*

GIERKE, Judge:

A general court-martial convicted appellant, in accordance with his conditional guilty pleas, of larceny (3 specifications), in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. The approved sentence provides for a bad-conduct discharge, confinement for 1 year, forfeiture of $500.00 pay per month for 12 months, and reduction to the lowest enlisted grade. The Court of Military Review affirmed the findings and sentence in an unpublished opinion.

This Court granted review of the following specified issue:

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY FAILING TO SUPPRESS EVIDENCE SEIZED FROM APPELLANT'S BEDROOM.

Specifications 1 and 2 of the Charge involved thefts of stereo equipment. Prior to

entry of pleas, appellant moved to suppress evidence seized from the bedroom of his off-base apartment. After the motion to suppress was denied, appellant entered conditional pleas of guilty to all three specifications of the Charge.

### Factual Background

Air Force security police investigators received information from an unnamed witness who had overheard a conversation indicating that there was stolen property in appellant's off-base apartment. The witness did not provide specific descriptions of the stolen property.

Appellant shared the apartment with Airman Titus and Airman Johnson. The investigators attempted to contact appellant and Airman Titus at their unit but were informed that they had been released from duty for the remainder of the day. They then contacted Airman Johnson, who indicated that he had seen items of stereo equipment in the apartment of the type that had been reported stolen. The investigators could not recall how specifically they described the stolen stereo equipment to Johnson. Johnson consented in writing to a search of the apartment. He escorted the investigators to the apartment and unlocked the door with a key. They searched the common areas of the apartment and then Johnson's bedroom. After searching an upstairs bathroom, they observed an open door to a bedroom. From outside the bedroom they observed components of a stereo system in the bedroom. Johnson informed the investigators that the bedroom was appellant's.

The investigators contacted Captain Pischnotte, a member of the base judge advocate's office, and asked him if Johnson had authority to consent to a search of appellant's bedroom. They informed Captain Pischnotte that they could see some stereo equipment in appellant's bedroom, but they told him that they could not determine if it was exactly what they were looking for. Captain Pischnotte told them that he needed more information. He told them to find out who had access to the room, whose names were on the

lease, and whether appellant previously had permitted Johnson to enter the room.

The investigators then asked Johnson what agreements had been made among the occupants about access to the apartment. Johnson informed them that there was "no formal agreement" but that the occupants "frequently borrowed personal property from each other, and they went in and out of each other's rooms without asking permission." Johnson informed them that "he had gone into the room on several occasions to receive personal property of his and to borrow personal property." Johnson also told them that all three tenants had signed the lease.

The investigators then contacted Captain Pischnotte again, and, after they had provided him with the additional information he had requested, he advised them that Johnson had authority to consent to a search of appellant's bedroom. They then entered appellant's bedroom, identified several items of stereo equipment and electronic equipment which had been reported as stolen, and seized the items.

The military judge "ruled that the Government ha[d] not met its burden of establishing that ... Johnson possessed common authority over [appellant's] bedroom." He based his ruling on the facts that appellant and Johnson had shared the apartment for only 2 weeks; there was no stated agreement giving Johnson common authority over White's bedroom; and that 2 weeks was "insufficient time to allow common authority to be presumed" based on day-to-day interaction. The military judge ruled further, however, that "the investigators reasonably believed that ... Johnson had authority to consent to the search of [appellant's] bedroom," so he denied the motion to suppress based on the good-faith exception.

### Discussion

■ In *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), the Supreme Court held that a person with common authority over the premises may consent to a search. The Court explained that "common authority" rests "on mutual use of the property by persons generally having

joint access or control for most purposes...." *Id.* at 171 n. 7, 94 S.Ct. at 993 n. 7. In *Illinois v. Rodriguez*, 497 U.S. 177, 188, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148 (1990), the Supreme Court held that a search may be "reasonable" even though the person purporting to give consent lacks actual authority to consent, if the facts known to the police when the purported consent is given "would ... 'warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises[.] *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)[,]" *quoting Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925).

*Rodriguez* has been interpreted as limited to mistakes of fact, not mistaken legal conclusions regarding actual authority to give consent. *See United States v. Salinas–Cano,* 959 F.2d 861, 866 (10th Cir.1992) (officer not mistaken about facts; was mistaken in "concluding that the facts authorized" person to give consent to search of closed suitcase on the premises); *United States v. Whitfield,* 939 F.2d 1071, 1075 (D.C.Cir.1991) (agents did not obtain enough facts to reasonably conclude that mother had authority to consent to search of adult son's room).

Appellant asserts that the military judge erred in concluding that the security police reasonably believed that Johnson had common authority over appellant's bedroom. He argues that the security police did not rely on incorrect facts, but instead they incorrectly concluded that the facts gave Johnson authority to give consent to the search.

The Government argues that Johnson had apparent authority to consent, based on the facts that (1) appellant left the bedroom open, exposing the stereo equipment to plain view; (2) Johnson routinely entered appellant's bedroom without express permission to borrow clothes, compact discs, and video tapes; and (3) Johnson and appellant had both signed the lease.

■ Johnson's actual authority over the premises was much less than he represented to the security police. Unknown to the security police, Johnson and appellant had shared the apartment for only 2 weeks, a period found by the military judge—and correctly, in our view—to be too short to give rise to implied or presumed permission to enter appellant's bedroom. Also unknown to the security police, Johnson's previous entries into appellant's bedroom usually had occurred in appellant's presence. Finally, even if appellant had routinely permitted Johnson to enter his bedroom without express permission, that implied permission would not reasonably extend to permitting intrusion into the bedroom by third parties, especially the police. It is one thing to allow a friend or cotenant limited access to a private bedroom without requiring express permission; it is quite another to allow the friend or cotenant to bring third parties, especially the police, into a private bedroom.

■ Nevertheless, we hold that the security police reasonably relied on Johnson's apparent authority, validated by Captain Pischnotte's legal advice, to consent to a limited intrusion into appellant's room to more closely examine the stereo equipment which was in plain view. They reasonably relied on Johnson's representation that he routinely entered appellant's room with appellant's knowledge and consent. They were unaware that Johnson and appellant had shared the apartment for only 2 weeks and that appellant usually had been present when Johnson entered his bedroom.

Both *Rodriguez* and this case involve police officers who were unaware of a fact which vitiated the person's actual authority to consent. In *Rodriguez* the person purporting to give consent no longer lived on the premises; in appellant's case the police did not know that appellant and Johnson had not lived together long enough to establish a presumed or implied permission to enter each other's bedrooms.

We limit our holding to Johnson's apparent authority to allow entry into appellant's bedroom for closer examination of the stereo equipment which was in plain view. We need not decide whether Johnson had actual or apparent authority to consent to a more intrusive search. *Cf. United States v. Salinas–Cano,* 959 F.2d at 865–66 (person had

authority to consent to search of bedroom but not of defendant's closed suitcase in the bedroom).

The decision of the United States Air Force Court of Military Review is affirmed.

Judges COX, CRAWFORD, and WISS concur.

SULLIVAN, Chief Judge (concurring in the result):

I concur in the result reached by the majority; yet I disagree with its approach. First, I conclude that the security police investigators did not have enough information to reasonably determine that appellant's cotenant, Airman Johnson, had the authority to consent to the search of appellant's bedroom by security police. *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *United States v. Whitfield*, 939 F.2d 1071 (D.C.Cir.1991).

In *Matlock*, the Supreme Court held that "[t]he authority which justifies the third-party consent ... rests ... on mutual use of the property by persons generally having joint access or control for most purposes[.]" 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7. *Rodriguez* means that "the reasonableness of an officer's determination of the authority of a consenting party must be judged by 'the facts available to the officer at the moment ....'" *United States v. Whitfield, supra* at 1074, *quoting Illinois v. Rodriguez, supra* at 188, 110 S.Ct. at 2801 and *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). In the case *sub judice*, the Government presented no evidence that the investigators could reasonably have believed that appellant's roommate had the authority to permit a search of his room. The only information presented to the officers was that Johnson had occasional access to appellant's room. However, there was no evidence that Johnson had joint access (*e.g.*, unaccompanied access) or that he and appellant shared *mutual use* of appellant's room. Therefore, I conclude that the information available to the investigators was insufficient to establish apparent authority. *Cf. United States v. Whitfield, supra.*

However, I vote to uphold admissibility of the evidence seized from appellant's bedroom based on the doctrine of inevitable discovery. *See United States v. Roa*, 24 MJ 297, 302–303 (CMA 1987) (Sullivan, J., concurring in the result); *see generally Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).