UNITED STATES, Appellee

V.

Gerald P. IVEY, Sergeant
U.S. Army, Appellant

No. 00-0702

Crim. App. No. 9700810

---

United States Court of Appeals for the Armed Forces

Argued May 22, 2001

Decided July 30, 2001

GIERKE, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., and SULLIVAN, EFFRON, and BAKER, JJ., joined.

<u>Counsel</u>

For Appellant:  Captain Stephanie L. Haines (argued); Colonel
    Adele H. Odegard, Lieutenant Colonel David A. Mayfield, and
    Major Mary M. McCord (on brief).

For Appellee:  Captain Susana E. Watkins (argued); Colonel David
    L. Hayden, Lieutenant Colonel Edith M. Rob, and Captain
    Daniel G. Brookhart (on brief).

Military Judge:  Richard J. Hough


**<u>This opinion is subject to editorial correction before publication</u>.**

Judge GIERKE delivered the opinion of the Court.

A general court-martial convicted appellant, contrary to his pleas, of conspiracy to wrongfully possess a controlled substance with intent to distribute it (2 specifications), violation of a regulation by possessing an unregistered firearm, and possession of a controlled substance with intent to distribute it (3 specifications), in violation of Articles 81, 92, and 112a, Uniform Code of Military Justice, 10 USC §§ 881, 892, and 912a, respectively. He was also convicted, contrary to his pleas, of transferring a firearm with knowledge that it would be used in a drug trafficking crime, in violation of 18 USC § 924(h) (4 specifications); knowingly making false and fictitious statements in connection with the acquisition of a firearm, in violation of 18 USC § 922(a)(6) (3 specifications); and knowingly transferring a firearm to a non-resident of the state, in violation of 18 USC § 922(a)(5) (2 specifications). The violations of Title 18 of the United States Code were assimilated under clause 3 of Article 134, UCMJ, 10 USC § 934 ("Crimes and offenses not capital").

The court-martial sentenced appellant to a dishonorable discharge, confinement for 15 years, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the sentence and gave appellant administrative credit for 185 days of pretrial confinement. The Court of Criminal Appeals set aside the conviction of one violation of 18 USC § 922(a)(6) (making a false and fictitious statement in connection with the purchase of a firearm). The court affirmed the remaining findings of guilty, and it reassessed and affirmed the sentence. 53 MJ 685, 702 (2000).

2

This Court granted review of the following issue:

> WHETHER THE GOVERNMENT FAILED TO PROCESS APPELLANT'S REQUESTS FOR IMMUNITY FOR CERTAIN CIVILIAN WITNESSES, IN VIOLATION OF APPELLANT'S DUE PROCESS RIGHTS AND RIGHT TO PRESENT A DEFENSE UNDER THE FIFTH AND SIXTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES.

For the reasons set out below, we affirm.

## Factual Background

Appellant and his brother, James Ivey, grew up in Gary, Indiana. Three of appellant's boyhood friends, Douglas Parrett and two brothers, Frank and Deon McFadden, were members of the Gangster Disciples, a nationwide gang that originated in the Chicago, Illinois, area. Appellant was stationed at Fort Carson, near Colorado Springs, Colorado. He and a local friend, Darryl Washington, were members of a Gangster Disciples chapter in Colorado Springs. Appellant did not know that Darryl Washington was an informant for the Bureau of Alcohol, Tobacco, and Firearms, Department of the Treasury (ATF).

In early 1996, appellant and Darryl Washington met with Douglas Parrett and the McFadden brothers in Gary, Indiana. At the meeting, appellant told them that another Fort Carson soldier, Private (PVT) Alfonso Murray, had bragged about his ability to obtain large quantities of marijuana in El Paso, Texas, where Murray and appellant previously had been stationed. Two drug-buying trips to El Paso ensued, resulting in purchases of 40 pounds of marijuana in February 1996 and 50 pounds of marijuana and 1 kilo of cocaine in April 1996. Between the first and second trips, PVT Murray was arrested on drug charges, and he became an informant for ATF.

Appellant was charged with two conspiracies and numerous firearms offenses related to the conspiracies. His alleged co-conspirators were PVT Murray, James Ivey, Douglas Parrett, and Deon McFadden. The facts surrounding the formation of the conspiracies and the acts in furtherance of the conspiracies are set out in detail in the opinion below. 53 MJ at 687-88.

On May 9, 1997, defense counsel gave trial counsel a request that the convening authority grant immunity to four civilian witnesses: James Ivey, Deon McFadden, Frank McFadden, and Douglas Parrett. On the same day, the defense filed a motion requesting the military judge to abate the proceedings and requested a continuance. The request for a continuance recited numerous grounds, including the pending request for immunity.

The immunity request stated that all four civilian witnesses were awaiting sentencing and would invoke their privilege against self-incrimination if called to testify. The request for immunity and the request for abatement both recited that, if the four witnesses received immunity, they would provide exculpatory testimony. James Ivey would testify "that [appellant] was not part of a conspiracy as alleged in Specifications 1 and 2 of Charge I." Deon McFadden's attorney told appellant's civilian attorney that he "had favorable information about [appellant's] involvement" but could not be more specific because of the attorney-client privilege. Appellant's defense counsel stated that Frank McFadden had refused to talk to them but that "from other sources, the defense expects he will also testify that [appellant] was not part of the conspiracy, and that Mr. Frank McFadden was the owner of the Calico rifle described in

Specification 3 of Charge II." Douglas Parrett also refused to talk to defense counsel but "[f]rom other sources, the defense expects he will testify that [appellant] was not part of the conspiracy," and that the gun shop owner "was not deceived regarding who were the true purchasers of the weapons described in Charge IV." Defense counsel represented at trial that Douglas Parrett told appellant's mother that appellant was not involved in the charged conspiracies.

The court-martial convened three days later, on May 12, 1997, to consider several matters, including appellant's motion for abatement. As of that date, appellant's immunity request had not been presented to the convening authority. Furthermore, the request for immunity had not been forwarded to the Judge Advocate General for transmittal to the United States Attorney General. Trial counsel informed the military judge that the four witnesses "all pled guilty to various offenses" but were awaiting sentencing. Trial counsel informed the military judge that a member of the Staff Judge Advocate's Office contacted the Assistant U.S. Attorney who prosecuted the four witnesses, and he stated that "they do not intend to grant them immunity." Finally, trial counsel informed the military judge that PVT Murray had been granted immunity.

The military judge made the following findings of fact regarding the request for immunity:

> 1. The aforementioned witnesses [James Ivey, Deon McFadden, Frank McFadden, and Douglas Parrett] were targeted for prosecution and are awaiting sentence after being found guilty of offenses similar to those which the accused is facing.

5

2.   The aforementioned witnesses are alleged as co-conspirators with [appellant] in criminal offenses; that is, Specifications 1 and 2 of Charge I alleging violations of Article 81 of the Uniform Code of Military Justice.

3.   The aforementioned witnesses will invoke their rights against self-incrimination if called to testify without immunity.

4.   The defense has asserted that Mr. James Ivey who is the brother of [appellant] will testify that [appellant] is not involved in either conspiracy charged in Specifications 1 and 2 of Charge I.

5.   The defense has not been able to talk with any of the remaining three witnesses.

6.   The defense has asserted that Mr. Doug Parrett has talked with the mother of [appellant] and that [appellant's] mother will say that Mr. Parrett told her that [appellant] was not involved in the conspiracies.

7.   The court does not find under the circumstances of this case that the government has engaged in discriminatory use of immunity to obtain a tactical advantage; nor, intended to disrupt the judicial fact-finding process; nor, that the government through overreaching has forced these witnesses to invoke their privilege against self-incrimination.

Based on these findings, the military judge denied the motion to abate the proceedings.

The trial on the merits commenced on May 14, 1997.  The prosecution case consisted of seized drugs, firearms, and documents; videotaped gun transactions; tape-recorded conversations; the testimony of a gun shop owner and one of his employees; the testimony of numerous law enforcement agents; the testimony of PVT Kim Rush, who drove appellant's vehicle during the first drug-buying trip; and the testimony of Darryl Washington and PVT Murray, government informants.

The only government witness who testified with a grant of immunity was PVT Murray.  PVT Murray was not a helpful witness

for the prosecution.  On cross-examination, he testified repeatedly that appellant was not part of the two charged conspiracies.

The defense case consisted of the testimony of appellant's mother and Damond McCready, the "governor" of the Colorado Springs chapter of the Gangster Disciples.  Both witnesses presented testimony intended to show that appellant was not a member of the Gangster Disciples.

After the trial but before the convening authority's action, appellant again requested that James Ivey, Douglas McFadden, and Douglas Parrett be granted immunity.  The Staff Judge Advocate informed the convening authority that the Assistant U.S. Attorney would not support a request for immunity.  By this time, Deon McFadden, Frank McFadden, James Ivey, and Douglas Parrett had been sentenced to confinement for 60 months, 13 months, 30 months, and 60 months, respectively.  In accordance with his Staff Judge Advocate's recommendation, the convening authority denied the request for immunity.  The request was never forwarded to the United States Attorney General.

The Court of Criminal Appeals found that it could not be determined from the evidence of record "whether the convening authority was ever asked, prior to trial, to deny or forward the defense immunity request."  53 MJ at 692.  The court also found that "the parties to the trial treated the request as denied." Id.  Finally, the court below noted that the defense made no objection to the military judge ruling on the immunity request without action by the convening authority.  Id.

Discussion

Appellant now contends that the Government violated RCM 704, Manual for Courts-Martial, United States (2000 ed.),[1] and Army regulations by not forwarding the immunity request to the United States Attorney General.  He further contends that the military judge abused his discretion by refusing to grant a continuance until the convening authority ruled on the request for immunity and by refusing to abate the proceedings.  He asserts that the military judge's abuse of discretion violated his right under the Sixth Amendment to present a defense.  He also asserts that it was likely the Attorney General would have granted the immunity request, since prosecution of all four witnesses had been completed.  Finally, he asserts that the four witnesses would have provided evidence that was material and exculpatory and would have corroborated PVT Murray's testimony.

The Government argues that the convening authority is not required to forward a request for immunity to the Attorney General if he denies it.  It also argues that the military judge correctly denied the motion for abatement.  Finally, the Government argues that the four witnesses' testimony was not clearly exculpatory, making any error in denying the motion for abatement harmless.

Article 46, UCMJ, 10 USC § 846, entitles the prosecution, defense, and the court-martial to "equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe."  The President has promulgated

---

[1] All Manual provisions are identical to the ones in effect at the time of appellant's court-martial.

several rules to implement Article 46, including RCM 704, subsection (e) of which provides:

> Unless limited by superior competent authority, the decision to grant immunity is a matter within the sole discretion of the appropriate general court-martial convening authority. However, if a defense request to immunize a witness has been denied, the military judge may, upon motion by the defense, grant appropriate relief directing that either an appropriate convening authority grant testimonial immunity to a defense witness or, as to the affected charges and specifications, the proceedings against the accused be abated, upon findings that:
>
> (1) The witness intends to invoke the right against self-incrimination to the extent permitted by law if called to testify; and
>
> (2) The Government has engaged in discriminatory use of immunity to obtain a tactical advantage, or the Government, through its own overreaching, has forced the witness to invoke the privilege against self-incrimination; and
>
> (3) The witness' testimony is material, clearly exculpatory, not cumulative, not obtainable from any other source and does more than merely affect the credibility of other witnesses.

A convening authority may not delegate the authority to grant immunity. RCM 704(c)(3).

A general court-martial convening authority may grant immunity to civilians not subject to the UCMJ "only when specifically authorized to do so by the Attorney General of the United States or other authority designated under 18 USC § 6004." RCM 704(c)(2). The Manual for Courts-Martial provides the following guidance:

> When testimony or a statement for which a person subject to the code may be granted immunity may relate to an offense for which that person could be prosecuted in a United States District Court, immunity should not be granted without prior coordination with the Department of Justice. Ordinarily coordination with

the local United States Attorney is appropriate. Unless the Department of Justice indicates it has no interest in the case, authorization for the grant of immunity should be sought from the Attorney General. A request for such authorization should be forwarded through the office of the Judge Advocate General concerned. Service regulations may provide additional guidance. Even if the Department of Justice expresses no interest in the case, authorization by the Attorney General for the grant of immunity may be necessary to compel the person to testify or make a statement if such testimony or statement would make the person liable for a Federal civilian offense.

RCM 704(c)(1) Discussion.

The implementing Army regulation requires that when a witness is not subject to the UCMJ, or the Department of Justice expresses an interest in the case, the file will be forwarded to the Judge Advocate General for coordination with the Department of Defense and the Department of Justice, and approval by the Attorney General. The file must include a draft order to testify, along with "findings that the witness is likely to refuse to testify on Fifth Amendment grounds and that the testimony of the witness is necessary to the public interest." Para. 2-4c(1), Army Regulation 27-10 (20 Sept 1999).[2]

All three prongs of RCM 704(e) must be met before a military judge may overrule the decision of the convening authority to deny a request for immunity. United States v. Richter, 51 MJ 213, 223 (1999). RCM 704(e) "recognizes the view of a majority of the federal courts that there is no right to grants of immunity under the Fifth or Sixth Amendments." Id.

A military judge's decision not to abate the proceedings is reviewed for abuse of discretion. Id. A military judge's

_____

[2] This provision is identical to the one in effect at the time of appellant's court-martial.

findings of fact will not be overturned on appeal unless they are clearly erroneous.  We review the military judge's conclusions of law de novo.  See United States v. Smith, 53 MJ 168, 170 (2000) (Article 13, UCMJ, 10 USC § 813, violation); United States v. White, 48 MJ 251, 257 (1998) (evidentiary ruling); United State v. Wean, 45 MJ 461, 463 (1997) (adequacy of representation).

The first question is whether a convening authority must forward an immunity request for someone not subject to the UCMJ to the Attorney General if he intends to deny it.  We answer this question in the negative.  The literal language of RCM 704(c)(2) restricts a convening authority's power to grant such immunity: he may grant it "only when specifically authorized to do so by the Attorney General" or his authorized designee.  The rule does not limit his power to deny such a request for immunity under RCM 704(e).  The purpose of RCM 704(c)(2) is to avoid interfering with the prosecution of civilian federal cases.  Denying a request for immunity has no impact on civilian prosecutions.

The Army regulation likewise contemplates that the file will be forwarded only when the convening authority desires to grant immunity, because it requires that the file include a draft order to testify and a finding that the testimony is necessary. Importantly, nothing in the record suggests that the convening authority desired to grant immunity.  Therefore, we hold that the convening authority was not required to forward the request to the Attorney General.

The second question is whether "the government failed to process appellant's requests for immunity."  Because RCM

704(c)(3) prohibits delegation of the authority to act on requests for immunity, a trial counsel or Staff Judge Advocate would violate the rule if he or she de facto denied a request for immunity by withholding it from the convening authority. The rule contemplates that all requests for immunity, from either the prosecution or the defense, will be submitted to the convening authority for a decision.

The court below found that it could not be determined from the record whether the convening authority informally acted on the request at any time before he formally denied it after trial. It is clear from the record, however, that at the time of the first Article 39(a)[3] session on May 12, the convening authority had not formally responded to defense counsel and had not forwarded the request to the Attorney General. The record does not indicate whether the convening authority was informed of the immunity request before the military judge preempted the issue by deciding that the request was de facto denied.

The court below found that the parties treated the request as denied, without defense objection. We have reservations about this finding, because the defense specifically asked the military judge to grant a continuance, reciting that the immunity request was pending. In our view, this request for a continuance was inconsistent with agreeing that the request had been denied.

We need not decide, however, whether the military judge erred by treating the situation as a de facto denial, because any error was harmless. It is clear from the record that if the convening authority had been pressed for a formal response, he

12

most probably would have denied the request. It is highly unlikely that the convening authority would have forwarded the request over the objection of the Assistant U.S. Attorney, or that the Attorney General would have approved it despite the objections of the Assistant U.S. Attorney. Finally, the convening authority's denial of the request when the defense renewed it after the trial is strong evidence that he did not intend to grant it before trial. We are satisfied that any error in failing to present the immunity request to the convening authority before the trial on the merits began did not have a "substantial influence" on the findings. See United States v. Pablo, 53 MJ 356, 359 (2000); United States v. Pollard, 38 MJ 41, 52 (CMA 1993), quoting Kotteakos v. United States, 328 US 750, 765 (1946).

Finally, we reject appellant's argument that any error was of constitutional dimension. That position was rejected in Richter, supra, and the cases cited therein.

The remaining question is whether the military judge abused his discretion by refusing to abate the proceedings. We hold that he did not. The military judge correctly applied the three-pronged legal test set out in RCM 704(e), and he found that the second prong was not met, i.e., that there was no discriminatory use of immunity or government overreaching. See Richter, supra. The military judge's finding of fact was not clearly erroneous. The prosecution relied primarily on the testimony of law enforcement agents, documentary and real evidence, video and audio tape recordings, and the testimony of coconspirators who

---

[3] UCMJ, 10 USC § 839(a).

did not receive immunity. The only prosecution witness who received immunity was PVT Murray, a government informant, who arguably turned out to be helpful to the defense.

The third prong also was not met because the proffered testimony was not "clearly exculpatory." The vague proffers of testimony amounted to no more than legal conclusions that appellant was not guilty. Furthermore, they were secondhand and thirdhand hearsay in some instances. The vague legal conclusions were cumulative to the much more factually detailed testimony of PVT Murray, but they contained virtually no specific facts that would corroborate PVT Murray's testimony. Finally, even though the civilian witnesses had been tried and sentenced when the convening authority acted on appellant's case, appellant did not offer the convening authority, the court below, or this Court more specific offers of expected testimony after the civilian prosecutions were completed.

## Decision

The decision of the United States Army Court of Criminal Appeals is affirmed.