UNITED STATES

v.

**Joey M. GALLAGHER, Gunnery Sergeant (E–7), U.S. Marine Corps.**

**NMCCA 200400151.**

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 13 Sept. 2002.

Decided 28 Feb. 2007.

Lt Brian Mizer, JAGC, USNR, Appellate
Defense Counsel.

William E. Cassara, Civilian Appellate Defense Counsel.

Lt Mark Herrington, JAGC, USNR, Appellate Government Counsel.

Before WAGNER, Chief Judge, VOLLENWEIDER, Senior Judge, and COUCH, Appellate Military Judge.

VOLLENWEIDER, Senior Judge:

Contrary to his pleas, a general court-martial composed of officer and enlisted members convicted the appellant of two specifications of possessing child pornography under 18 U.S.C. § 2252, and one specification of violating Section 16–17–470 of the Code of Laws of South Carolina ("Peeping Tom" statute), in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The court-martial sentenced the appellant to confinement for 13 years, reduction to pay grade E–1, forfeiture of all pay and allowances, and a dishonorable discharge. The convening authority approved the sentence as adjudged.

We have considered the record of trial, the appellant's six assignments of error,[1] the Government's answer, and oral argument by the parties.[2] We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

## Defense Witness Immunity

■ In his first assignment of error, the appellant asserts that the military judge erred in reversing his decision regarding a grant of immunity to a defense witness, Marcial Villalon. We disagree.

Grants of immunity are governed by RULE FOR COURTS-MARTIAL 704, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2002 ed.). The decision to grant immunity is a matter within the sole discretion of the convening authority. R.C.M. 704(e). If a defense request to immunize a witness has been denied, the military judge may direct that an appropriate convening authority grant immunity or abate the proceedings, if each of the following three things are found by the court:

(1) The witness intends to invoke the right against self-incrimination to the extent permitted by law if called to testify; and

(2) The Government has engaged in discriminatory use of immunity to obtain a tactical advantage, or the Government, through its own overreaching, has forced the witness to invoke the privilege against self-incrimination; and

---

1. The appellant's assignments of error:

   I. Whether the Government convinced the military judge to overturn his prior grant of immunity by presenting the military judge with spurious and inaccurate information at the hearing on the motion for reconsideration, for the sole purpose of depriving appellant of a fair trial.
   II. Whether evidence contained in a closed briefcase, belonging to, and under the sole control of appellant, discovered by the Naval Criminal Investigative Service (NCIS), during a so-called permissive or consent search of appellant's quarters, which permission was granted by appellant's spouse, exceeded the scope of consent and therefore should have been suppressed.
   III. By extension of the preceding assignment of error, the military judge erred when he failed to suppress the computer seized by the NCIS agents during the so-called permissive search, and the results of the examination conducted pursuant to search authorization granted solely on the basis of the items seized from the unlawfully-seized briefcase.
   IV. Whether the military judge erred and abused his discretion in permitting evidence of

"other acts"—specifically, a stipulation of fact by a minor, K.V.N.—under Military Rule of Evidence 404(b), which detailed repeated acts of sexual intercourse allegedly engaged in by appellant and K.V.N. when she was under the age of 14 and which were so overwhelmingly prejudicial that the stipulation's admission deprived appellant of a fair trial.
V. Whether the evidence presented at trial was sufficient, as a matter of law, to sustain a conviction under Specification 1 of the Charge, which alleges a violation of South Carolina's "Peeping Tom" statute, section 16–17–470, Code of Laws of South Carolina, assimilated under 18 U.S.C. Section 13, and whether the military judge failed to instruct the members properly that the evidence regarding K.V.N.'s testimony should not be considered in determining the appellant's guilt or innocence of Specification 1 of the Charge.
VI. Whether the sentence adjudged, the maximum permitted under the UCMJ, was so unduly disproportionate that it must be set aside.

2. As part of the Court's outreach program, oral argument was held at the George Washington University Law School.

(3) The witness' testimony is material, clearly exculpatory, not cumulative, not obtainable from any other source and does more than merely affect the credibility of other witnesses.

*Id.* The military judge is not empowered to immunize a witness. If the military judge finds that a grant of immunity is essential to a fair trial, the military judge may abate the proceedings until immunity is granted by an appropriate convening authority. R.C.M. 704, Analysis, App. 21 at A21–38–39. The military judge must consider the Government's interest in not granting immunity to the defense witness. *Id.*

A military judge's decision not to abate the proceedings is reviewed for an abuse of discretion. A military judge's findings of fact will not be overturned on appeal unless they are clearly erroneous. We review the military judge's conclusions of law *de novo*. *United States v. Ivey*, 55 M.J. 251, 256 (C.A.A.F.2001).

The appellant questions the military judge's decision not to abate his trial where the Government refused to grant immunity to Marcial Villalon, a former Marine and friend of the appellant. The convening authority had denied the appellant's request to provide testimonial immunity to Villalon. Villalon testified that he would invoke his right against self-incrimination if called to testify at trial on the merits. The appellant testified that he received large quantities of child pornography on two occasions from Villalon, for the purpose of destroying it.

The Government presented evidence that the Deputy Assistant Attorney General for the Criminal Division of the United States Department of Justice also denied the request for immunity. The military judge found as well that the United States Attorney's Office had a specific and unequivocal intent to open an investigation into Villalon's activities, and that office was sincere in its concerns regarding Villalon's potential for ongoing criminal sexual activity involving minors.

The appellant admitted that he knowingly possessed child pornography. He argues that Villalon's testimony would support his innocent possession defense. The appellant misconstrues the law.

The appellant was accused and ultimately convicted of possession of child pornography in violation of 18 U.S.C. § 2252. There is in fact an affirmative defense to this offense:

It shall be an affirmative defense to a charge of violating paragraph (4) of subsection (a) that the defendant—

(1) possessed less than three matters containing any visual depiction proscribed by that paragraph; and

(2) promptly and in good faith, and without retaining or allowing any person, other than a law enforcement agency, to access any visual depiction or copy thereof—

(A) took reasonable steps to destroy each such visual depiction; or

(B) reported the matter to a law enforcement agency and afforded that agency access to each such visual depiction.

18 U.S.C. § 2252(c).[3]

By the governing statute's own terms, this defense was not available to the appellant. He possessed significantly more than three items containing child pornography in each of three locations: his briefcase, his footlocker, and his personal computer. Additionally, by his own admission, he did not promptly take steps to destroy each depiction of child pornography found by NCIS.[4] To the contrary, he put some in a briefcase, some in a footlocker and uploaded more onto his home computer, to view at his leisure. He did not report the matter to a law enforcement agency. Even if Villalon had testified at trial in the manner expected by the appellant, the testimony would have done him no good as it

---

**3.** As a general matter, no evil intent need be shown to prove an offense under 18 U.S.C. § 2252, as long as the accused knowingly possessed child pornography. Even an arguably laudable intent is not a defense. The only defense is that set forth at § 2252(c). *See United States v. Matthews*, 209 F.3d 338 (4th Cir.2000)(investigative reporter receiving and distributing child pornography for news story).

**4.** The appellant was charged with possession of only those items of child pornography that he had not destroyed.

would not provide a legal defense. Accordingly, Villalon's testimony could have been excluded on relevancy grounds. MILITARY RULES OF EVIDENCE 401 and 402, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2002 ed.).

In any event, the desired testimony is not clearly exculpatory—that is, capable of being characterized as evidence which clearly negates guilt. *United States v. James*, 22 M.J. 929, 932–33 (N.M.C.M.R.1986). It would not have exonerated the appellant completely even if it was believed. *United States v. Monroe*, 42 M.J. 398, 401 (C.A.A.F.1995). Thus, the appellant's argument fails the third prong of R.C.M. 704(e).

Furthermore, the facts in this case do not support a conclusion that the "Government has engaged in discriminatory use of immunity to obtain a tactical advantage" or "through its own overreaching, has forced the witness to invoke the privilege against self-incrimination." R.C.M. 704(e)(2). The Government did not grant immunity to any Government witnesses. *Cf. United States v. Richter*, 51 M.J. 213, 222–23 (C.A.A.F.1999)(Government granted immunity to five Government witnesses, but denied immunity to defense witness who was under investigation—discrimination not found). There is no evidence of discriminatory use of immunity, and no evidence that the Government overreached in any way to force Villalon to invoke the privilege against self-incrimination. The appellant's position would require the Government to forego the possible prosecution of Villalon, the person identified by the appellant's own testimony as the source of a large quantity of child pornography. Neither R.C.M. 704(e) nor the Constitution[5] requires such an absurd result.

Finally, the appellant has ignored that portion of R.C.M. 704(e)(3) that requires that the witness' testimony do "more than merely affect the credibility of other witnesses." Villalon's expected testimony would be cumulative with the appellant's testimony, and would only affect the credibility of another witness—the appellant. The appellant never proffered exactly what Villalon would have said if he testified at trial, content instead to let the military judge and this Court extrapolate the substance of Villalon's testimony from the appellant's own testimony. While Villalon may possibly have been able to testify that he gave the print and digital child pornography to the appellant for destruction, he could not have actual knowledge of the appellant's own intent in receiving it. Villalon's testimony that he gave the contraband to the appellant for destruction would likewise be contradictory to the fact that the appellant actually saved a large quantity of the admitted child pornography in a new format: the hard drive of his own computer. Villalon likewise could not testify why the appellant did not promptly destroy the child pornography. Consequently, while it may be true that an affirmative defense may be raised by any admissible evidence, to have any reasonable chance of proving the defense of innocent possession in this case, the appellant would have had to testify in any event, because only the appellant could testify as to what he really intended to do with the large mass of child pornography provided to him by Villalon.[6]

The three prongs of R.C.M. 704(e) are stated in the conjunctive, so all three prongs must be met. *Ivey*, 55 M.J. at 256; *Richter*, 51 M.J. at 223; R.C.M. 704, Analysis, App. 21 at A21–38–39. *See also United States v. Booker*, 62 M.J. 703, 709 (A.F.Ct.Crim.App.2006)(denial of immunity not error where only two of three prongs shown), *rev. denied*, 64 M.J. 188 (C.A.A.F. 2006). The appellant has clearly failed to establish the second and third prongs. Therefore, we hold that the military judge did not abuse his discretion by refusing to abate the proceedings.[7]

---

5. There is no right to a grant of immunity under the Fifth or Sixth Amendments to the U.S. Constitution. *Richter*, 51 M.J. at 223.

6. This is particularly true because while the appellant's fingerprints were found on the printed child pornography, Villalon's were not.

7. We note that while the appellant writes at length about the decision of the Attorney General not to grant immunity to Villalon, this argument is of no moment where, as here, the appellant does not otherwise prove all three prongs of R.C.M. 704(e). In fact, a convening authority need not even forward an immunity request to the Attorney General if the convening authority

## Consent Search

The appellant alleges that the military judge erred by admitting evidence resulting from the opening of an unlocked, unmarked briefcase containing child pornography found during a search of the appellant's home. Under the facts of this case, we disagree.

### Facts

The appellant shared a home on board Marine Corps Air Station Beaufort, South Carolina with his wife and their three children (ages 15, 13, and 11). His wife was forty-two years old, had a high school education, had dealt with legal documents in the normal course of her life, had served on active duty in the United States Marine Corps for six years (attaining the rank of sergeant), had held several jobs since leaving the Marine Corps, and was currently the manager of a Blockbuster video store. The Gallaghers had lived in the house on base for seven to eight years, and had converted the attached garage into a recreation area for use by all members of the family. It was set up like a family room. The children and their friends congregated and watched television in the garage. The adults held parties there.

On the morning of 2 November 2001, two NCIS special agents went to the Gallagher residence to ask Mrs. Gallagher for consent to conduct a permissive search of her house. The agents told Mrs. Gallagher that an allegation had been made against her husband that he may have acted in an inappropriate manner with a child. They explained to her that they wanted to search her house for videotapes or pictures of the alleged victim or other children. The agents presented and explained to Mrs. Gallagher a standard "Department of the Navy Permissive Authorization for Search and Seizure" form. Mrs. Gallagher read the form and signed it. The form gave the agents authorization to search the house and "permission to remove and retain any property or papers found during the search which are desired for investigative purposes." Appellate Exhibit IV. The form signed by Mrs. Gallagher clearly states: "I have been informed of my constitutional right to refuse to permit this search in the absence of a search warrant. In full understanding of this right, I have nevertheless decided to permit this search to be made." *Id.* Mrs. Gallagher's signature endorsed the statement that "I make this decision freely and voluntarily and it is made with no threats having been made or promises extended to me." *Id.* In permitting NCIS to search the house, Mrs. Gallagher placed no limits on what areas they could search, either before or during the search.

In carrying out the search permitted by Mrs. Gallagher, the agents opened numerous closed containers, drawers and cabinets throughout the house, including bedrooms. Mrs. Gallagher did not protest the opening of closed containers or any other aspect of the search.

The garage/family room was the last area searched. One of the agents found a briefcase there, next to a freezer in plain view. The briefcase had no external markings or name tag indicating ownership. It was closed but unlocked.[8] The agent opened the briefcase and found therein a binder containing photographs of children engaged in sexual acts. The first photograph was labeled with the same first name as the victim of the "Peeping Tom" offense. Mrs. Gallagher was in the living room when the child pornography was found. For the first time, when the agents were carrying the briefcase to their car, Mrs. Gallagher identified it as belonging to the appellant.

After finding the child pornography in the briefcase, the agents decided to seize the family computer. The computer was later accessed pursuant to command authorization

---

intends to deny the immunity request. *Ivey*, 55 M.J. at 256.

**8.** The NCIS agent who found the briefcase testified that it was unlocked when he found it. A forensic expert testified that there were no signs that the locks had been forced open. Mrs. Gallagher did say that the briefcase was always locked, but her testimony is considerably suspect in this regard as she also testified that she never tried to open it. Her testimony that her children would never open the briefcase is also of little consequence and speculative, as she could not know what the children, or their friends, did in actuality.

under MIL. R. EVID. 315. More child pornography was found therein.

### Standard of Review

" 'A military judge's decision to admit or exclude evidence is reviewed under an abuse of discretion standard.' " *United States v. Barnett,* 63 M.J. 388, 394 (C.A.A.F.2006)(quoting *United States v. McDonald,* 59 M.J. 426, 430 (C.A.A.F.2004)). A military judge "abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect." *United States v. Ayala,* 43 M.J. 296, 298 (C.A.A.F. 1995). *See also McDonald,* 59 M.J. at 430. " 'In reviewing a ruling on a motion to suppress, we consider the evidence in the light most favorable to the prevailing party.' " *United States v. Rodriguez,* 60 M.J. 239, 246– 47 (C.A.A.F.2004)(quoting *United States v. Reister,* 44 M.J. 409, 413 (C.A.A.F.1996) (citations omitted)).

We find that the military judge's findings of fact are supported by the record and are not clearly erroneous. We therefore adopt them. We have reviewed his conclusions of law and find no error in his view of the law.

### Discussion

The Fourth Amendment protects the "security of one's privacy against arbitrary intrusion by the police." *Schneckloth v. Bustamonte,* 412 U.S. 218, 242, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)(quoting *Wolf v. Colorado,* 338 U.S. 25, 27, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949)). A search of a residence conducted without a warrant based on probable cause is " '*per se* unreasonable … subject only to a few specifically established and well-delineated exceptions,' " one of which is a search conducted with the resident's consent. *Id.* at 219, 93 S.Ct. 2041 (quoting *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)).

■ A person with common authority over the premises may consent to a search. *United States v. Matlock,* 415 U.S. 164, 170, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). *See also* MIL. R. EVID. 314(e)(2). In *Matlock,* the Supreme Court held that "the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that au-

thority is shared." 415 U.S. at 170, 94 S.Ct. 988. *See also Reister,* 44 M.J. at 413 (C.A.A.F.1996); *United States v. Clow,* 26 M.J. 176 (C.M.A.1988).

■ The Supreme Court has expanded the third party consent exception to include instances where law enforcement officers held an incorrect but reasonable belief that the third party had authority to consent to the search. *Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). The Court stated:

> As with other factual determinations bearing upon search and seizure, determination of consent to enter must "be judged against an objective standard: would the facts available to the officer at the moment … 'warrant a man of reasonable caution in the belief' " that the consenting party had authority over the premises? *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). If not, then warrantless entry without further inquiry is unlawful unless actual authority exists. But if so, the search is valid.

497 U.S. at 188–89, 110 S.Ct. 2793. *See also United States v. White,* 40 M.J. 257 (C.M.A.1994)(consent search valid where officers were unaware of a fact that vitiated the person's actual authority to consent). The consent doctrine set forth by the Supreme Court in the cases cited above applies as well to the search of closed containers, where it is objectively reasonable under the circumstances for the officer to believe that the scope of consent permitted him to open a closed container, and the container might reasonably hold the object of the search. *Florida v. Jimeno,* 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991).

The appellant herein does not contest the validity of Mrs. Gallagher's consent to search her home, focusing his argument on her authority to consent to search of the briefcase found in the garage during that general search. As was the case in *Jimeno,* we think that it was objectively reasonable for the NCIS agents to conclude that the general consent given by Mrs. Gallagher to search the house for videotapes and pictures included valid consent to search unlocked containers which might hold such evidence, found in

the common areas of the house. *See Jimeno,* 500 U.S. at 250, 111 S.Ct. 1801. "A reasonable person may be expected to know that [child pornography] generally [is] carried in some form of a container." *Id.* at 251, 111 S.Ct. 1801.

The Supreme Court has rejected a requirement that if police seek to search closed containers, they must separately seek permission to search each container. "A suspect may of course delimit as he chooses the scope of the search to which he consents. But if his consent would be reasonably understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization." *Id.* at 252, 111 S.Ct. 1801.

The Seventh Circuit has applied *Rodriguez* and *Jimeno* to facts that are conceptually similar to those in the case *sub judice.* *United States v. Melgar,* 227 F.3d 1038 (7th Cir. 2000). In *Melgar,* the police searched a hotel room for counterfeit checks after receiving consent to do so from one of the persons sharing the room. During the search, the officers found a purse that had no external identifying marks. Opening the purse, they found the counterfeit checks that were subsequently used to convict Melgar. *Id.* at 1040. The court noted that "[g]enerally, a consent to search a space includes consent to search containers within that space where a reasonable officer would construe the consent to extend to the container." *Id.* at 1041. The approach taken by the court in *Melgar* is one we feel is appropriate here:

> In a sense, the real question for closed container searches is which way the risk of uncertainty should run. Is such a search permissible only if the police have positive knowledge that the closed container is also under the authority of the person who originally consented to the search (Melgar's view), or is it permissible if the police do not have reliable information that the container is *not* under the authorizer's control. We are not aware of any case that has taken the strict view represented by the first of these possibilities.

*Id.* The court upheld the consent search where (1) the police had no reason to know that the purse did not belong to the consenter; (2) the room had been rented to the consenter; (3) there were no exterior markings on the purse that should have alerted the police to the fact that it belonged to another person; and (4) the consenter knew the police were looking for evidence which could easily fit inside the purse. *Id.* at 1041–42. We agree that "[a] contrary rule would impose an impossible burden on the police. It would mean that they could never search closed containers within a dwelling (including hotel rooms) without asking the person whose consent is being given *ex ante* about every item they might encounter." *Id.* at 1042. We conclude as well that a briefcase is entitled to no greater protection under the Fourth Amendment than the purse in *Melgar.*

The appellant did not cite *Melgar* in his brief, relying instead on an earlier decision by a different Seventh Circuit panel, *United States v. Basinski,* 226 F.3d 829 (7th Cir. 2000). *Basinski* has never been cited in a military case, and we find it distinguishable on its facts from both *Melgar* and the case *sub judice.* In *Basinski,* prior to opening a briefcase held for the defendant by a third party, the police were informed that (1) the briefcase belonged to the defendant; (2) the briefcase was locked; (3) the third party was never given the combination to the lock; (4) the third party did not have any possessory interest in any of the contents of the briefcase; (5) the briefcase had always been locked while in the third party's possession; and (6) the defendant had instructed the third party to never open the briefcase and to destroy its contents rather than allow anyone to look at them. *Id.* at 835. Under those facts, none of which are present in the instant case, the court concluded that the third party had no authority over the interior of the briefcase, and that no reasonable police officer could have believed otherwise. *Id.* Because the facts in *Basinski* are unique and different in all key respects from this case, we find that case of no value in deciding this issue.

*Conclusion*

We find that the NCIS agents properly relied on Mrs. Gallagher's consent to open the briefcase, and that the appellant's second

assignment of error is without merit. As his third assignment of error, regarding the seizure of the home computer, is derivative of the consent search issue, we reject that assignment of error as well.

### Prior Bad Acts

In his fourth assignment of error, the appellant alleges that the military judge erred by admitting stipulated testimony concerning sexual relations he had with a very young girl nine to twelve years earlier. Those allegations had resulted in his trial and acquittal in an Ohio state court of three counts of rape and one count of corruption of a minor. We determine that the military judge's findings of fact are supported by the record, his conclusions of law were not erroneous, and that the appellant's fourth assignment of error is without merit.

### *Facts*

Prior to trial, the parties stipulated to the expected testimony of the young girl involved in the Ohio matter, VK. Appellate Exhibit XLVII. At the time of the appellant's court-martial, VK was a twenty-one-year-old married woman living in California. However, in 1990, she was a ten-year-old girl living in Ohio. Her family and the appellant's family were neighbors and friends. She played with the appellant's children. VK's stipulated testimony covered in considerable detail a course of frequent (two to three times a week) sexual intercourse with the appellant over a three-year period when she was ten to thirteen years old. The stipulated testimony also included inconsistencies that the parties agreed would have come out on cross-examination of VK, including inconsistencies in the total number of instances of intercourse.

The appellant was tried in Ohio on three counts of raping VK and one count of corruption of a minor. At trial, the appellant asserted that his relationship with VK was innocent. He was acquitted by a jury in 1994.

Specification 1 of the Charge herein alleges that the appellant tried to use a digital video camera to violate the privacy of BM, a ten-year-old girl, the stepdaughter of a

friend, neighbor and fellow Marine. At trial, BM testified that the appellant came into her home when her parents were both absent, and tried to hide a digital video camera in her bedroom. The appellant admitted to being in the house with the camera, when he knew the parents were not there, with BM. However, he claimed that he was there for an innocent purpose: to film a montage of items in the house as a surprise gift for BM's parents.

The remaining specifications of the Charge alleged possession of a large quantity of child pornography, both in the form of images on the hard drive of his computer and in hard copy. Many of the images appear to be of young girls in the nine to thirteen-year-old range. The appellant's defense was that he had no evil intent. He claimed that he received the child pornography (from a friend and former Marine who also had been previously acquitted of indecent acts with a young girl) solely for the innocent purpose of destroying it. The appellant also testified that he transferred to his personal computer huge quantities of child pornography from compact discs that were part of the material he was given, for an innocent purpose: to see if any of the children in the images were local children.

The appellant moved *in limine* to prevent introduction of evidence of the prior acts described by VK's stipulated testimony. After reviewing the evidence, making detailed findings of fact and conclusions of law, and after specifically performing a MIL. R. EVID. 403 balancing test, the military judge denied the appellant's motion, and allowed the Government to "present evidence of the 'other acts' involving the accused and [VK] for the purpose of showing intent and motive." Appellate Exhibit XXXI at 7.

Thereafter, the military judge gave proper limiting instructions to the members on this issue on three separate occasions:

(1) after testimony from an NCIS agent revealed that a background check had shown the prior charges and acquittal;[9]

---

**9.** "Members of the the [sic] court, during Special Agent Bailey's testimony you heard evidence per-

taining to a[sic] NCIS background check that revealed that Gunnery Sergeant Gallagher was

(2) immediately after the trial counsel read the stipulated testimony of VK; and [10]

(3) prior to retiring for findings.[11]

The appellant voiced no objection to these instructions.

During opening statement, trial defense counsel told the members that it would be shown that the appellant's possession of child pornography was innocent, with the intent to destroy it, and that the appellant had no evil intent when he was in BM's bedroom with a digital video camera. Record at 283–84. Trial defense counsel repeated in closing argument the innocent purpose theme for both sets of offenses. Record at 747, 751. On the merits, the bulk of the appellant's testimony went towards explaining his innocent intent for possessing hard copies of child pornography, for loading child pornography onto his computer, and for entering BM's home with a digital video camera when he knew that her parents were away. See, e.g., Record at 565, 574, 578, 598, 602. As to the sexual exploita-tion of VK, the appellant simply stated that his relationship with VK was completely innocent, and that VK was a liar, then and now.

### Discussion

The appellant questions the decision of the military judge to admit evidence of his prior acts under MIL. R. EVID. 404(b), which provides in pertinent part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....

MIL. R. EVID. 404(b) is identical to FEDERAL RULE OF EVIDENCE 404(b).

■ The admissibility of uncharged misconduct under MIL. R. EVID. 404(b) is analyzed under the three-pronged test estab-

---

once charged with statutory rape and corruption of a minor and was subsequently acquitted. This evidence may be considered by you for the limited purpose of its tendency, if any, to prove Gunnery Sergeant Gallagher's intent to video [BM] when he entered the residence in Laurel Bay. You may not consider this evidence for any other purpose and you may not conclude from this evidence that Gunnery Sergeant Gallagher is a bad person or has criminal tendencies and that he, therefore, committed the offense charged.
Do all members understand this instruction?
That is an affirmative response from all members.
Can all of the members follow this instruction?
That is an affirmative response from all members."
Record at 426–27.

10. "Members of the court, the parties to this trial have stipulated or agreed that if [VK] were called before the court as a witness, in other words present in court today, she would have testified, under oath, substantially as was read to you. This stipulation does not admit the truth of the testimony, which maybe [sic] attacked or—excuse me. Which may be attacked or contradicted or explained in the same way as any other testimony. You may consider—along with all other factors effecting [sic] believability—the fact that you have not had an opportunity to personally observe this witness.
Now, additionally, evidence that the accused may have engaged in consensual sexual activity with [VK], who was approximately 13 years old at the time, may be considered by you only for the limited purpose of it's tendency, if any, to prove the motive of the accused to videotape [BM] and you may not consider this evidence for any other purpose and you may not conclude from this evidence that the accused is a bad person or has criminal tendencies and that he therefore committed the offenses charged. Now do all members understand these instructions?
That's an affirmative response from all members.
Can all the members follow this instruction?
That's an affirmative response by all the members."
Record at 461–62.

11. "Uncharged misconduct, other acts, or offenses. You may consider evidence that the accused may have engaged in consensual sexual activity with [VK] while she was approximately 11, 13–years–old for the limited purpose of its tendency, if any, to determine whether the accused had an intent to commit the offense in Specification 1 and to rebut the contention of the accused that his possession of the material charged in Specifications 2 and 3 were for a lawful purpose. You may not consider this evidence for any other purpose and you may not conclude from this evidence that the accused is a bad person or has general criminal tendencies and that he therefore committed the offenses charged."
Record at 763.

lished in *United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A.1989):

(1) Does the evidence reasonably support a finding by the court members that the appellant committed the prior crimes, wrongs, or acts?

(2) What fact of consequence is made more or less probable by the existence of this evidence?

(3) Is the probative value substantially outweighed by the danger of unfair prejudice?

"The evidence at issue must fulfill all three prongs to be admissible." *Barnett*, 63 M.J. at 394. *See also United States v. Thompson*, 63 M.J. 228, 230 (C.A.A.F.2006). The stipulated testimony of VK satisfies each of these three prongs.

**First Prong**

■■■ VK's stipulated testimony described a sordid scenario, where the appellant, then as now an adult Marine noncommissioned officer, took advantage of his friendship with her parents to gain access to and win acceptance from this young girl in order to satisfy his lust. While the stipulation contained some inconsistencies in VK's version of events over time, her testimony under oath that the acts of sexual intercourse occurred on multiple occasions certainly could have been believed by the members. The threshold for the first *Reynolds'* prong is low—a preponderance of the evidence. *United States v. Washington*, 63 M.J. 418, 422 (C.A.A.F.2006). *See also Dowling v. United States*, 493 U.S. 342, 348–50, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990); *Huddleston v. United States*, 485 U.S. 681, 690, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). That threshold was easily met here.

The fact that the appellant was acquitted in his Ohio trial does not dictate a different result. As our superior court has held, the admissibility of prior acts evidence is governed by the Military Rules of Evidence, not by the jury's verdict. A finding of not guilty is not a finding of fact. Rather, it is merely a determination that the Government has not proved all the elements of the charged offense beyond a reasonable doubt. *Washington*, 63 M.J. at 422. *See also United States v. Watts*, 519 U.S. 148, 155, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997); *Dowling*, 493 U.S. at 348, 110 S.Ct. 668; *United States v. Griggs*, 51 M.J. 418, 419–20 (C.A.A.F.1999); *United States v. Miller*, 46 M.J. 63, 66 (C.A.A.F. 1997).

We find, as did the military judge, that the Government proved by a preponderance of the evidence the occurrence of sexual conduct between the appellant and VK.

**Second Prong**

Having determined that the members could find the prior acts did occur as testified via stipulation, the military judge found that the evidence in question would make a fact of consequence more or less probable: the appellant's intent. "Proving intent is a proper purpose for admitting extrinsic-acts evidence." *United States v. Humpherys*, 57 M.J. 83, 91 (C.A.A.F.2002).

Courts have long held that any need for similarity between the prior acts and the offenses at issue in the current trial is less stringent for proving intent (including negation of innocent intent) than for proving a common plan or scheme. *United States v. Peterson*, 20 M.J. 806, 813 (N.M.C.M.R.1985). When the purpose of the contested evidence is related to intent, we must consider " 'whether Appellant's state of mind in the commission of both the charged and uncharged acts was sufficiently similar to make the evidence of the prior acts relevant on the intent element.' " *United States v. Hays*, 62 M.J. 158, 164 (C.A.A.F.2005)(quoting *McDonald*, 59 M.J. at 430). " 'Extrinsic acts evidence may be critical to the establishment of the truth as to the disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct.' " *Id.* (quoting *United States v. Tanksley*, 54 M.J. 169, 176 (C.A.A.F.2000)). Not only is prior acts evidence admissible to prove the specific intent element of a crime, it is admissible to negate an innocent intent defense. *See Humpherys*, 57 M.J. at 90–91 (innocent purpose defense); *United States v. Puckett*, 405 F.3d 589, 596–97 (7th Cir.2005)(intent to possess cocaine for personal use rather than for distribution).

In the instant case, the appellant asserted at each stage of the trial innocent purpose as a defense to each of the three specifications he faced. In the pretrial stage, the appellant argued that he needed the Government to grant immunity to a witness to testify regarding his innocent possession of child pornography. During opening statement, trial defense counsel emphasized that the appellant took possession of the child pornography with an innocent intent to destroy it, and was alone with BM in her room with a digital video camera for an innocent purpose. During his trial testimony, the appellant attempted to convince the members that he received a vast store of child pornography solely for the innocent purpose of its destruction, that he placed large amounts of child pornography onto his home computer for the innocent purpose of determining whether any local children were depicted therein, and that he was in BM's bedroom with a digital video camera when he knew her parents were away for the innocent purpose of creating a video montage as a gift to her father, a friend and fellow Marine. Trial defense counsel's closing argument emphasized once again the appellant's "innocent intent" claims.

We agree with the military judge that evidence that the appellant may have engaged in sexual intercourse with VK when she was ten to thirteen years old was relevant to a determination of the validity of the appellant's innocent purpose defense on the "Peeping Tom" charge involving a similarly aged young girl, as well as his actual intent to become a "Peeping Tom" under Specification 1 of the Charge. Both old and new acts, if accepted as true, show the appellant's intent to exploit his relationship with very young girls for his own sexual satisfaction. Likewise, we agree that the contested evidence was relevant to his innocent intent defense to the child pornography specifications. We note in coming to this conclusion that many of the children in the child pornography possessed by the appellant appear to be young girls in the same age range. We note as well the similar relationships the appellant had with the families of VK and BM that allowed him to gain access to these children for his criminal purposes.

**Third Prong**

The third prong of the *Reynolds* test requires the balancing of the probative value of the contested prior acts evidence against the danger of unfair prejudice. We find, as did the military judge, that the danger of unfair prejudice did not substantially outweigh the probative value of the appellant's prior course of sexual conduct with VK, especially in light of the appellant's innocent intent defense to all charges. We agree that the evidence was prejudicial to the appellant. However, it was not *unfairly* prejudicial and had significant probative value. Any possible danger of unfair prejudice was negated by the three separate sets of instructions given to the members. *See Miller*, 46 M.J. at 64–66 (accused exploited relationship with absent parents to get to child; prior acquittal; acts several years old; admission of evidence on issue of intent). *See also Hays*, 62 M.J. at 163–65 (prior acts evidence to show intent in case involving solicitation of child sexual abuse).

*Conclusion*

We find that the military judge properly analyzed the evidence under the three *Reynolds* factors, and properly admitted evidence of intercourse with VK as a young girl.

**Remaining Assignments of Error**

The appellant's remaining assignments of error allege that the evidence was insufficient to convict him of the "Peeping Tom" offense, that the military judge erred by failing to instruct the members not to consider the stipulated testimony for the "Peeping Tom" offense, and that his sentence was too severe. Having carefully examined the entire record, and in light of our rulings above, we find that these assignments of error are without merit.

**Conclusion**

Accordingly, we affirm the findings of guilty and the sentence, as approved by the convening authority.

Chief Judge WAGNER and Judge COUCH concur.