UNITED STATES

v.

**Staff Sergeant Patrick D. BOOKER,
United States Air Force.**

**ACM S30276 (F REV).**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 29 Aug. 2002.

Decided 16 March 2006.

Appellate Counsel for Appellant: Colonel Beverly B. Knott, Lieutenant Colonel Mark R. Strickland, Major Terry L. McElyea, Major Rachel E. VanLandingham, Major Kyle R. Jacobson, Major Sandra K. Whittington, Major Jennifer K. Martwick, and Captain Vicki A. Belleau.

Appellate Counsel for the United States: Colonel LeEllen Coacher, Lieutenant Colonel Gary F. Spencer, Lieutenant Colonel Robert V. Combs, and Major Kevin P. Stiens.

Before STONE, SMITH, and MATHEWS, Appellate Military Judges.

## OPINION OF THE COURT UPON FURTHER REVIEW

SMITH, Judge:

The appellant was convicted, contrary to his pleas, by a special court-martial consisting of enlisted members, of two specifications of wrongful use of marijuana, a violation of Article 112a, UCMJ, 10 U.S.C. § 912a. The adjudged sentence included a bad-conduct discharge, hard labor without confinement for 3 months, and reduction to E–1. The convening authority approved the bad-conduct discharge and reduction to E–1. The appellant raises seven errors for our consideration, five of which are discussed below.[1] Finding no material prejudice to the substantial rights of the appellant, we affirm the findings and sentence.

### Background

The appellant was an E–5 with 16 years of service at the time of the charged misconduct. He was charged with two separate uses of marijuana based on two positive urinalysis tests: one specimen taken 27 August 2001 and the other taken on 29 November 2001. Charges were preferred on 7 February 2002, and trial was set for 18 April 2002. At some point before 29 March 2002, the appellant brought some capsules of "Horny Goat Weed" (HGW) to his trial defense counsel, Major P, and in some manner, indicated they might be the source of his positive test results. According to the testimony of the president of the company that produces HGW, the product is an herbal "sexual per-

---

1. Two of the assigned errors allege defects in the post-trial phase. We previously ordered new post-trial processing and reserved our decision on all seven of the assigned errors. In light of the new post-trial processing, we find the two errors alleging post-trial defects are moot.

formance enhancer." The appellant's counsel sent at least one capsule to a civilian lab for testing, and the lab apparently reported it contained some amount of tetrahydrocannabinol (THC), the main psychoactive ingredient of marijuana.

Major P then contacted the Armed Forces Institute of Pathology (AFIP) by phone on 29 March 2002 and asked whether AFIP would test the capsules. AFIP laboratory personnel agreed, and, by cover memorandum dated 1 April 2002, Major P sent one capsule and an unopened full bottle of HGW to AFIP. The results: The single capsule contained THC and the capsules from the unopened bottle did not. On 12 April 2002, Major P notified the government that the appellant intended to rely on an innocent ingestion defense, contending the appellant had unknowingly ingested HGW that contained THC. On 15 April 2002, Major P supplemented the notice by informing the government that AFIP had tested a capsule of HGW, the test was positive for THC, and the defense planned to call a defense paralegal and a Navy lieutenant from AFIP to establish the defense.

A pretrial hearing was held on 18 April 2002. The government asked for, and received, time to investigate the innocent ingestion evidence. That investigation led to the preferral of obstruction of justice and marijuana possession charges on 20 June 2002. On 26 June 2002, the convening authority referred those charges to a different special court-martial.[2] The decision not to try those offenses with the original charges and the use of the innocent ingestion evidence are the bases for the first four assigned errors.

On 22 August 2002, the defense provided another supplemental notice to indicate they might call the appellant's brother, Mr. Booker, who would testify that, "unbeknownst to SSgt Booker, [his brother] put marijuana into SSgt Booker's Horny Goat Weed tablets ... Mr. Booker indicated during an interview with the defense that he intends to assert his rights against self-incrimination should he be called to testify. As such, the defense intends to submit a request that Mr. Booker be granted testimonial immunity." The convening authority ultimately denied the request.

A significant portion of the trial was devoted to resolving Major P's involvement with the innocent ingestion evidence and how deeply the government could delve into it. The obstruction charge, referred to the second court-martial, alleged that the appellant endeavored to influence Major P to have the HGW capsule tested, a capsule allegedly altered when the appellant himself added marijuana to it, in order to mislead Major P and the upcoming court-martial. Even though Major P was a likely witness for the second court-martial, the dilemma was whether he could represent the appellant on the first set of charges, especially in light of the government's desire to introduce evidence of the alleged obstruction under Mil. R. Evid. 404(b) to show consciousness of guilt.

Government investigators had seized the remaining HGW capsules the appellant gave to Maj P and had them tested by a Drug Enforcement Agency (DEA) laboratory in Dallas, Texas. The DEA also found THC in the capsules and those results were admitted at trial. The HGW president testified via video teleconference to explain how his product was manufactured and that there definitely was no THC added to HGW in the manufacturing process. The government was allowed to call a Navy lieutenant to testify what AFIP did and, more importantly, how AFIP came to test the capsule. The government was allowed to explore what Major P told the lieutenant about how he got the HGW, because the military judge found no privilege existed regarding information released to a third party (AFIP) with a client's consent.

The appellant testified and denied using marijuana. He said his brother and his family moved in with the appellant in the summer/fall of 2001. He said things did not go well, explaining that his brother was lazy, did not look for work, and used drugs and alcohol. On direct examination, the appellant implicated his brother:

---

**2.** On 15 November 2002, the appellant was acquitted of the obstruction and marijuana possession charges.

Q: Sergeant Booker, who would have had a reason to put marijuana in the supplements you were taking?

A: That would be my brother.

Q: Would your brother have had an opportunity to do this?

A: Yes.

As discussed further below, the appellant was not allowed to repeat Mr. Booker's alleged out-of-court statement to him: "Man, I'm sorry, you're [going] to kill me." The appellant did explain that he kept the HGW in the garage, where he had set up a workout area. He contended Mr. Booker knew the HGW was there and had ample opportunity to tamper with the capsules.

### Assigned Errors

I. WHETHER THE GOVERNMENT COMMITTED A MANIFEST INJUSTICE WHEN IT DENIED THE APPELLANT HIS CHOICE OF COUNSEL AND WHETHER IT DENIED HIM A FAIR TRIAL BY PREFERRING OBSTRUCTION OF JUSTICE AND RELATED WRONGFUL POSSESSION CHARGES BASED SOLELY ON THE APPELLANT'S INNOCENT INGESTION DEFENSE.

On 21 June 2002, the appellant released Major P from representing him on all pending charges because of the prospect that Major P could be a witness against him. Two other military counsel were then detailed to represent the appellant. At trial, the military judge concluded the release was premature; it was by no means certain that an actual conflict would develop, particularly given Major P's stated intention to assert the attorney-client privilege if called to testify. The appellant expressed his desire to keep Major P as his counsel, and Major P rejoined the defense team.

The need for Major P's testimony hinged on the admissibility of evidence concerning his involvement with the HGW capsules. As discussed under Assigned Error III below, the military judge allowed the government to offer evidence that the appellant created false evidence, admissible as consciousness of guilt under Mil. R. Evid. 404(b). This evidence included communications from Major P to AFIP personnel about the capsules—specifically, communications not covered by the attorney-client privilege because they were matters the appellant authorized Major P to disclose.

The government counsel and the trial defense counsel tried, unsuccessfully, to negotiate a stipulation of fact that would have avoided the need for Major P to testify. The government then called the Navy lieutenant from AFIP to testify concerning what Major P told him about how he came to have the HGW capsules. The trial defense counsel team concluded that Major P had to testify to counter a portion of the lieutenant's testimony, which prompted the government to move for Major P's disqualification. The appellant's trial defense counsel did not object to the motion.

■ The appellant casts this issue as a denial of counsel, reviewed under a harmless beyond a reasonable doubt standard as a constitutional claim. We conclude the real issue is the military judge's decision to grant the government's motion to disqualify Major P, which we review for abuse of discretion. *Wheat v. United States*, 486 U.S. 153, 164, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988); *Shadwell v. Davenport*, 57 M.J. 774, 780 (N.M.Ct.Crim.App.2002).

■ The appellant and his trial defense counsel sowed the seeds of disqualification. It was foreseeable that counsel might become a witness as soon as the innocent ingestion evidence was passed to Major P. The defense made the decision to call Major P as a witness and did not object to the government's motion to disqualify him. The government did not deny the appellant his choice of counsel. In view of the restrictions against a lawyer acting as an advocate and a necessary witness in the same case,[3] we conclude the military judge did not abuse his discretion in granting the motion. *See United States v. Smith*, 35 M.J. 138, 142 (C.M.A.1992). *See also United States v. Thomas*, 22 M.J. 57, 59 (C.M.A.1986) (the right to counsel of choice is not absolute).

The appellant also contends that the preferral of the obstruction of justice and mari-

---

3. Rule 3.7 of the *Air Force Rules of Professional Conduct* (17 Aug 2005) provides that "A lawyer

juana possession charges denied him a fair trial. We find the preferral of charges to be irrelevant to the true issue here: The admissibility of innocent ingestion evidence as prosecution evidence under Mil. R. Evid. 404(b). In light of our disposition of the third assignment of error below, we do not agree that the appellant was denied a fair trial by the government's use of this evidence, irrespective of whether the alleged obstruction of justice and marijuana possession charges were charged.

*II. WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY DENYING THE DEFENSE MOTION TO ABATE THE PROCEEDINGS SO AS TO PERMIT JOINDER OF ADDITIONAL, RELATED CHARGES SET FOR COURT–MARTIAL THE FOLLOWING WEEK.*

■ We review this issue for an abuse of discretion, both in terms of the convening authority's decision not to join the charges and the military judge's refusal to abate the proceedings. *United States v. Menoken,* 14 M.J. 10, 11 (C.M.A.1982); *United States v. Alexander,* 29 M.J. 877, 880 (A.F.C.M.R. 1989).

Rule for Courts–Martial (R.C.M.) 601(e)(2) recognizes the convening authority's broad discretion in deciding whether to join offenses. "In the discretion of the convening authority, two or more offenses charged against an accused *may* be referred to the same court-martial." *Id.* (emphasis added). The Discussion to R.C.M. 601(e)(2) states: "Ordinarily all known charges should be referred to a single court-martial." In reviewing the convening authority's exercise of discretion, service courts have been reluctant to find an abuse of discretion absent evidence of government misconduct. *United States v. Fahey,* 33 M.J. 920, 922 (A.C.M.R.1991) ("no evidence of Government misconduct in referring the drug charge to trial separately, we hold that the convening authority did not abuse his discretion"); *Alexander,* 29 M.J. at

879–80 (there is "no current requirement that all known charges be brought at one time . . . . [w]e find no unreasonable or vexatious Government conduct here . . . . we find no merit in the contention that the Government sought a punitive discharge by foul means. Neither was there an abuse of discretion by the convening authority"); *United States v. Gettz,* 49 C.M.R. 79, 83, 1974 WL 14010 (N.C.M.R.1974) ("no showing of improper motive").

The only government explanation offered on the record for the separate referrals was a concern about how joining the additional charges would affect the maximum punishment of the original special court-martial. While the record is not well developed on the convening authority's referral decision, we agree with the military judge that there was no evidence of abuse of discretion, malice, or intent to deprive the appellant of his due process. The convening authority could properly consider the maximum punishment of the forum in disposing of offenses, and he apparently did, according to the trial counsel's explanation. In this case, joinder of all known offenses was not required and there is no evidence of improper motive by the convening authority or the government otherwise. Therefore, the military judge did not abuse his discretion in refusing to abate the proceedings. *See United States v. Ivey,* 55 M.J. 251, 256 (C.A.A.F.2001).

*III. WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY DENYING THE DEFENSE MOTION TO EXCLUDE EVIDENCE UNDER MIL. R. EVID. 404(B).*

A military judge's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *United States v. Tanksley,* 54 M.J. 169, 175 (C.A.A.F.2000). "Moreover, Mil.R.Evid. 404(b), like its federal rule counterpart, is one of inclusion. . . . The nub of the matter is whether the evidence is offered for a purpose other than to show an accused's predisposition to commit an offense." *Id.*

shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where: (1) The testimony relates to an uncontested issue, (2) (modified) The testimony relates to

the nature of legal services rendered in the case, or (3) Disqualification of the lawyer would work substantial hardship on the client."

■ Evidence may be admitted under Mil. R. Evid. 404(b) to show an accused's consciousness of guilt. *United States v. Borland*, 12 M.J. 855, 857 (A.F.C.M.R.1981). "The relevant evidence need not fit exactly into one of the pigeon holes described under [Mil. R. Evid.] 404(b) so long as the evidence is offered for a purpose other than to show the accused's predisposition to commit the crime." *United States v. Arevalo*, 43 M.J. 719, 721 (A.F.Ct.Crim.App.1995) (citing *United States v. Castillo*, 29 M.J. 145, 150 (C.M.A. 1989)).

■ The admissibility of uncharged misconduct is tested using a three-prong analysis:

1. Does the evidence reasonably support a finding by the court members that appellant committed prior crimes, wrongs or acts?

2. What "fact ... of consequence" is made "more" or "less probable" by the existence of this evidence?

3. Is the "probative value ... substantially outweighed by the danger of unfair prejudice?"

*United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A.1989) (citations omitted).

■ The military judge allowed the government to present evidence in its case about the HGW capsules, in effect converting prospective defense evidence of innocent ingestion into government evidence that the appellant knew he wrongfully used marijuana. The military judge ruled the government could offer "evidence that the accused created—knowingly created false evidence to offer into this trial as a fraudulent innocent ingestion defense. The court has ruled that that would be admissible as consciousness of guilt under [Mil. R. Evid.] 404." Apart from evidence of the existence of the HGW capsules, the testing done on them by AFIP and the DEA, and the testimony by the president of the company that manufactured the capsules, the military judge allowed the government to elicit Mil. R. Evid. "404(b) evidence of the accused providing Horny Goat Weed capsules to Major [P], who then passed those capsules along to the Armed Forces Institute of Pathology Laboratory, which tested some as negative and some as positive." Explaining his ruling to Major P in particular, the

military judge said, "I think they can ask you what did you say to [AFIP lab personnel] ... my ruling is you don't have to share anything that you didn't already tell somebody outside of the attorney/client relationship that was intended to be disclosed."

Our superior court has recognized that the Mil. R. Evid. 403 assessment of prejudice (the third prong of the *Reynolds* analysis) is important in the uncharged misconduct context,

> [B]ecause now a very low threshold exists as to admissibility of evidence of other misconduct. No longer is it required that such evidence be 'clear and convincing,' as was once the case. Instead, now the military judge must admit the evidence if he concludes that the factfinder could reasonably find by a preponderance of the evidence that the other misconduct had occurred, even though the judge himself would not make such a finding.

*Castillo*, 29 M.J. at 151 (citations omitted).

In this case, the military judge relied on *Castillo*, *Borland*, and *Arevalo* in determining the admissibility of the innocent ingestion evidence. He explained:

> [T]he case law instructs that consciousness of guilt evidence as represented by subsequent attempts to get witnesses to say specific things, to change stories, and I think it's not a very difficult jump at all to go from there to manufacturing false evidence, is more likely to be done by individuals who have consciousness of guilt, not because they are bad people; therefore, more likely to have done both crimes, but because the fact that they are [sic] know they are guilty gives them a further motive or reason, if you will, to take the subsequent action.... And in fact, subsequent acts, such as either asking witnesses to lie or manufacturing false evidence is admissible, not for the purpose that a person has a predisposition to commit crimes, but for the purpose of establishing an individual who knows they are guilty are more likely to do those things.

More than one inference could be drawn from the appellant's presentation of the HGW capsules to his counsel. *See, e.g., United States v. Curtis*, 45 M.J. 480, 482 (C.A.A.F.1997) (discovery of a diuretic during a search of the appellant's home showed

consciousness of guilt, and constituted indirect evidence of marijuana use by showing an effort to avoid detection, even though the product could have been used for weight reduction as the appellant testified). One inference that could have been drawn was that the appellant adulterated the HGW capsules and gave them to his trial defense counsel to use in his defense. The evidence certainly supported such an inference and tended to show the appellant's awareness of his guilt.

The AFIP witness testified the suspect capsule was visibly different than the capsules from the unopened bottle of HGW, and there was "chunky" material inside that appeared to be a green leafy substance and a casing of a marijuana seed. The witness agreed during cross-examination that it would not be difficult for someone to take the components of a capsule apart and put them back together. Further, the appellant presented the HGW to his trial defense counsel less than a month before trial. We conclude this evidence could reasonably support a finding that the appellant adulterated the capsule, that the evidence was relevant to the consideration of the appellant's knowing use of marijuana, and that the probative value of the evidence did not outweigh its prejudicial effect. We find no abuse of discretion in the military judge's ruling.

*IV. WHETHER THE GOVERNMENT'S FAILURE TO APPROVE THE APPELLANT'S REQUEST FOR IMMUNITY FOR HIS KEY WITNESS VIOLATED THE APPELLANT'S RIGHT TO PRESENT A DEFENSE UNDER THE FIFTH AND SIXTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES AND WHETHER THE MILITARY JUDGE COMPOUNDED THAT ERROR, THEREBY MATERIALLY PREJUDICING THE APPELLANT, BY PROHIBITING HIM FROM TESTIFYING TO STATEMENTS MADE BY THAT UNAVAILABLE WITNESS.*

*A. Denial of Immunity*

R.C.M. 704(e) governs a convening authority's decision to grant immunity. "This rule recognizes the view of a majority of the federal courts that there is no right to grants of immunity under the Fifth or Sixth Amendments." *United States v. Richter*, 51 M.J. 213, 223 (C.A.A.F.1999). Further, "[t]he majority rule recognizes that an accused has no Sixth Amendment right to immunized testimony of defense witnesses and, absent prosecutorial misconduct which is intended to disrupt the judicial fact-finding process, an accused is not denied Fifth Amendment due process by the Government's failure to immunize a witness." R.C.M. 704(e), Appendix 21.

If a defense request to immunize a witness is denied, the military judge may, upon defense motion, direct an appropriate convening authority to grant testimonial immunity to a defense witness or abate the proceedings as to the affected charges and specifications. Three prerequisite findings must be made:

(1) The witness intends to invoke the right against self-incrimination to the extent permitted by law if called to testify; and

(2) The Government has engaged in discriminatory use of immunity to obtain a tactical advantage, or the Government, through its own overreaching, has forced the witness to invoke the privilege against self-incrimination; and

(3) The witness' testimony is material, clearly exculpatory, not cumulative, not obtainable from any other source, and does more than merely affect the credibility of other witnesses.

R.C.M. 704(e).

 The military judge found two of the prerequisites were met (the witness, Mr. Booker, intended to invoke his rights and his testimony was clearly exculpatory). The trial defense counsel conceded there was no overreaching by the government, so the issue was whether the government engaged in discriminatory use of immunity to gain a tactical advantage. The military judge found no evidence of such discriminatory use of immunity. We review a military judge's refusal to abate the proceedings for an abuse of discre-

tion. *Ivey*, 55 M.J. at 256; *Richter*, 51 M.J. at 223. We agree there was no evidence of discriminatory use of immunity and, accordingly, find no abuse of discretion in the military judge's decision.

### B. Exclusion of Hearsay Testimony

The military judge did not allow the appellant to repeat his brother's alleged out-of-court statement to him: "Man, I'm sorry, you're [going] to kill me." The clear implication of this statement was that Mr. Booker had adulterated the HGW capsules. The appellant's trial defense counsel contended the statement was admissible as a statement against interest under Mil. R. Evid. 804(b)(3), or as residual hearsay under Mil. R. Evid. 807. The military judge found the statement inadmissible under both theories.[4]

■ We review a military judge's exclusion of evidence for an abuse of discretion. *United States v. Hyder*, 47 M.J. 46, 48 (C.A.A.F.1997). It was the appellant's burden to show that: (1) The declarant was unavailable; (2) The declarant's statement was against his penal interest; and (3) The corroborating circumstances clearly indicated the trustworthiness of the statement. *United States v. Benton*, 57 M.J. 24, 30 (C.A.A.F. 2002). As to the third prong, our superior court has identified the circumstances to be considered in determining the probable veracity of the in-court witness and the reliability of the out-of-court declarant:

(1) whether there is any apparent motive for the out-of-court declarant to misrepresent the matter,

(2) the general character of the speaker,

(3) whether other people heard the out-of-court statement,

(4) whether the statement was made spontaneously,

(5) the timing of the declaration and the relationship between the speaker and the witness.

*Id.* at 31 (citing *United States v. Rasmussen*, 790 F.2d 55, 56 (8th Cir.1986) (citations omitted)).

■ The military judge found Mr. Booker was unavailable and the statement to be against his penal interest. The military judge did not find the statement trustworthy. He considered a number of factors, to include: (1) That the purported statement by Mr. Booker was not under oath; (2) That Mr. Booker was living in the appellant's house and living on the "largess" of his brother, the proponent of the statement; (3) Mr. Booker apparently had no independent source of income or housing, and had an interest in making sure the declarant did not lose his income through the court-martial; (4) It was in the appellant's interest to say his brother made the statement; (5) The appellant was the one who took the statement (apparently no one else heard it); and, (6) Even though the statement was corroborated by the testing of the actual capsules, this corroboration was less compelling because the results were known at the time the purported statement was made.

We conclude the military judge's ruling on Mil. R. Evid. 804(b)(3) grounds was well reasoned and consistent with *Benton* and *United States v. Warner*, 25 M.J. 738, 740 (A.F.C.M.R.1987) ("a statement against apparent penal interests is not *ipso facto* vested with guarantees of reliability"). With respect to admissibility on residual hearsay grounds, the military judge based his ruling on the same factors he considered in his Mil. R. Evid. 804(b)(3) analysis. "The residual-hearsay exception is 'intended to apply [only] to highly reliable and necessary evidence.'" *United States v. Wellington*, 58 M.J. 420, 425 (C.A.A.F.2003) (quoting *United States v. Giambra*, 33 M.J. 331, 334 (C.M.A.1991)). Further, "[a] military judge's decision to admit residual hearsay is entitled to 'considerable discretion' on appellate review." *Wellington*, 58 M.J. at 425 (quoting *United States v. Pollard*, 38 M.J. 41, 49 (C.M.A.1993)). We find no abuse of discretion by the military judge in his refusal to admit the statement

---

4. The literal statement was not hearsay because it was not offered for the truth of the matter asserted. *See* Mil. R. Evid. 801(c). It obviously was not offered or considered on that basis because, read literally, the statement was not relevant to the existence of any fact that is of consequence. *See* Mil. R. Evid. 401.

on either Mil. R. Evid. 804(b)(3) or Mil. R. Evid. 807 grounds.

Before leaving this assignment of error, we offer a final observation about the combined effect of the immunity denial and hearsay testimony ruling. We fully recognize an accused's fundamental right to present witnesses in his defense, particularly as that right has been broadly interpreted by our superior court in drug urinalysis cases. *United States v. Brewer*, 61 M.J. 425, 429 (C.A.A.F.2005). From the appellant's perspective, the separate actions of the convening authority (in denying immunity) and the military judge (in excluding the purported statement of Mr. Booker) combined to deny him the right to present a defense. The record shows otherwise: The members had evidence the HGW capsules had been adulterated and the appellant was permitted to implicate his brother.

The trial defense counsel requested immunity for Mr. Booker on the day the trial resumed, 22 August 2002—four months after the 18 April 2002 pretrial session. The timing of Mr. Booker's purported admission to trial defense counsel was suspicious and did not lend credibility to the appellant's modified innocent ingestion defense. The convening authority's denial of immunity was understandable and reasonable.

We have the benefit of a developed record to validate concerns about the timing of Mr. Booker's purported admission and the consequent request for immunity. Based on his trial testimony, the appellant came to believe that his brother had both the motive and the opportunity to tamper with his HGW capsules. The appellant testified he kept the HGW in his garage workout area. He identified four people who would have had access to his bottle of HGW: his wife, his daughter, his brother, and his brother's wife. The appellant testified his relationship with his brother was poor after Mr. Booker moved in with him ("we fought constantly"). The appellant explained that his brother had a history of drug use, including marijuana, and he knew the appellant had the HGW in the garage work-out area. In light of those

facts, Mr. Booker was a logical suspect—and therefore a potential witness—long before the immunity request on 22 August 2002.

Again, the military judge did not prevent the appellant from implicating his brother. The narrow issue was whether the purported statement by Mr. Booker was admissible through the appellant. We presume that Mr. Booker could have claimed responsibility for adulterating the HGW capsules had he testified at trial, and the members would have judged the credibility of Mr. Booker's claim had he done so. But that was not the posture facing the military judge with respect to the specific statement purportedly made by Mr. Booker to the appellant. The likelihood that the same or similar evidence would have been admissible had Mr. Booker testified did not dictate the outcome of the military judge's evidentiary ruling. He applied the facts and circumstances to the law and found the statement untrustworthy—a conclusion within his discretion.[5]

## V. WHETHER THE SERIES OF ERRORS CUMULATIVELY PREJUDICED THE APPELLANT'S RIGHT TO A FAIR AND IMPARTIAL TRIAL THEREBY NECESSITATING REVERSAL OF HIS CONVICTIONS.

Having found no error prejudicial to the substantial rights of the appellant in the asserted errors, there is no cumulative prejudice necessitating reversal of the convictions. *See United States v. Dollente*, 45 M.J. 234, 242 (C.A.A.F.1996).

### Conclusion

The approved findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F.2000). Accordingly, the approved findings and sentence are

AFFIRMED.

---

5. We doubt that the outcome would have been different had the statement been admitted, but there is no need to engage in a harmless error analysis having found no error.