# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

_____

## No. ACM 40476

_____

### UNITED STATES
*Appellee*

**v.**

### Ian J. B. CADAVONA
Airman Basic (E-1), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

Decided 16 January 2025

_____

*Military Judge*: Matthew P. Stoffel (arraignment, motions); Christopher D. James (trial).[1]

*Sentence*: Sentence adjudged 27 October 2022 by GCM convened at Kadena Air Base, Japan. Sentence entered by military judge on 6 December 2022: Dishonorable discharge, 21 months' confinement, and a reprimand.

*For Appellant*: Major Frederick J. Johnson, USAF.

*For Appellee*: Colonel Steven R. Kaufman, USAF; Lieutenant Colonel J. Peter Ferrell, USAF; Mary Ellen Payne, Esquire.

Before ANNEXSTAD, DOUGLAS, and PERCLE, *Appellate Military Judges*.

Judge DOUGLAS delivered the opinion of the court, in which Senior Judge ANNEXSTAD and Judge PERCLE joined.

_____

[1] The trial judge for the arraignment and motions hearing stated on the record that Article 30a, Uniform Code of Military Justice, 10 U.S.C. § 830a, proceedings had taken place on 5 November 2021 and on 18 November 2022. However, the record does not contain any information about the Article 30a, UCMJ, judge, or any documentation related to the proceedings. Appellant does not assign error, and we find none as neither Rules for Courts-Martial 1112(b) nor 1112(f) require it.

---

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

---

DOUGLAS, Judge:

A general court-martial composed of a military judge convicted Appellant, contrary to his pleas, of one specification[2] of possession of child pornography in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[3] The military judge sentenced Appellant to a dishonorable discharge, 21 months' confinement, and a reprimand. The convening authority took no action on the findings and approved the sentence in its entirety.[4]

Appellant raises four issues on appeal which we have reworded: whether (1) the prosecution of this offense constitutes plain error because the Government knew about the evidence of the underlying misconduct prior to Appellant's first court-martial; (2) Appellant was denied effective assistance of counsel when his trial defense counsel withdrew an objection to a change in the specification of the charge; (3) a 224-day appellate docketing delay warrants relief; and (4) 18 U.S.C. § 922 is constitutional as applied in Appellant's case. We also considered an additional issue, not raised by Appellant, that was identified during this court's Article 66(d), UCMJ, 10 U.S.C. § 866(d), review: (5) whether Appellant is entitled to relief for facially unreasonable appellate delay in accordance with *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006), or *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002).

We have carefully considered Appellant's contention in issue (4) and find that it does not require discussion or warrant relief. *See United States v. Matias,* 25 M.J. 356, 361 (C.M.A. 1987). As to the remaining issues, we find no error that materially prejudiced Appellant's substantial rights, and we affirm the findings and the sentence.

---

[2] The military judge merged two specifications—both alleging possession of child pornography but during different timeframes—into one specification. *See* Section II.B. *infra.*

[3] Unless otherwise noted, all references to the UCMJ and to the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[4] The convening authority referred two specifications of possession of child pornography, alleging possession occurred both before 1 January 2019 and on or after 1 January 2019. Pursuant to R.C.M. 902A, and before arraignment, Appellant elected sentencing rules in effect on 1 January 2019. This election remained in effect after the trial judge merged the two offenses for findings purposes.

# I. BACKGROUND

Appellant joined the Air Force in 2016 and was assigned to Kadena Air Base (AB), Japan. By late 2019, law enforcement was investigating him for indecent recording and broadcasting of an adult. As part of that investigation, the Air Force Office of Special Investigations (OSI) searched and seized Appellant's electronic devices. Unrelated to the indecent recording and broadcasting allegations, OSI agents found suspected child exploitive material (CEM). They obtained additional search warrants, including one for Appellant's iCloud account. This account was used as back-up storage for one or more of Appellant's devices. In Appellant's iCloud account, OSI discovered dozens of videos of child pornography, which became the basis for the Article 134, UCMJ, conviction.

# II. DISCUSSION

## A. Failure to Try All Known Charges at a Single Court-Martial

For the first time, on appeal, Appellant asserts the Government intentionally prosecuted him in successive courts-martial when it knew of all offenses before the start of the first court-martial. As evidence of this argument, Appellant directs us primarily to the OSI preliminary report, dated 8 September 2020, which lists the discovered child pornography videos, with names and source paths. The report explains that the videos were contained in the Apple search return for Appellant's iCloud account. The summary of the findings stated it was a preliminary analysis and that the videos were sent to the National Center for Missing and Exploited Children (NCMEC) portal for further analysis. As a consequence of being tried in two successive courts-martial, Appellant argues, he was prejudiced because the Government punished him unnecessarily by forcing consecutive sentences. The Government disagrees with Appellant's contentions and submits that it was not prepared to prove the Article 134, UCMJ, offense of child pornography possession at the time of the first court-martial. We find the Appellant has not met his burden on this issue we and find no error.

### 1. Additional Background

Investigation into Appellant began in late 2019 and continued into 2020. During that time, Appellant was investigated for indecent recording and broadcasting. On 25 March 2021, at Kadena AB, he was found guilty, contrary to his pleas, at a general court-martial, comprised of a military judge alone, of two specifications of indecent recording and broadcasting in violation of Article 120c, UCMJ, 10 U.S.C. § 920c, and one specification of obstruction of justice in violation of Article 131b, UCMJ, 10 U.S.C. § 131b. He was sentenced to a bad-conduct discharge, seven months' confinement, and reduction to the grade of E-1. On 23 September 2022, the Air Force Court of Criminal Appeals affirmed

the findings of guilty and the sentence. *See United States v. Cadavona*, No. ACM 40129, 2022 CCA LEXIS 545, at *15 (A.F. Ct. Crim. App. 23 Sep. 2022) (unpub. op.), *rev. denied*, 83 M.J. 249 (C.A.A.F. 2023).

After release from confinement, Appellant was prosecuted at Kadena AB, for possession of child pornography. On 27 October 2022, he was found guilty at a general court-martial of the one specification before this court: possession of child pornography in violation of Article 134, UCMJ. He was sentenced to a dishonorable discharge, 21 months' confinement, and a reprimand.

During the presentencing phase of his second court-martial, Appellant, in his unsworn statement, explained, "I have known a second court-martial is [sic] coming since before my first court went to trial." Appellant's trial defense counsel, during presentencing argument, repeated Appellant's assertion, "He already knew that this court-martial was coming before he even went to trial the first time." Appellant pleaded not guilty to a charge of violating Article 134, UCMJ, at this trial. He did not object or move to dismiss for any reason.

### 2. Law

#### a. Standard of Review

The lack of a motion or objection at trial forfeits the issue, absent waiver. Rule for Courts-Martial (R.C.M.) 905(e). Forfeited issues are reviewed for plain error. *United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017) (citing *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009)). For this court to grant relief under a plain error standard of review, Appellant bears the burden of establishing: "(1) there was error; (2) the error was clear and obvious; and (3) the error materially prejudiced a substantial right." *United States v. Gomez*, 76 M.J. 76, 79 (C.A.A.F. 2017) (citing *United States v. Knapp*, 73 M.J. 33, 36 (C.A.A.F. 2014)). "As all three prongs must be satisfied . . . the failure to establish any one of the prongs is fatal to a plain error claim." *Id.* (omission in original) (quoting *United States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006)).

#### b. Joinder

"The purpose of military law is to promote justice, to assist in maintaining good order and discipline in the armed forces, to promote efficiency and effectiveness in the military establishment, and thereby to strengthen the national security of the United States." *Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. I, Preamble, ¶ 3.

"Pretrial, trial, and post-trial procedures, including modes of proof, for cases arising under [Chapter 47, UCMJ,] triable in courts-martial . . . may be prescribed by the President by regulations which shall . . . apply the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States . . . ." Article 36(a), UCMJ, 10 U.S.C. § 836(a).

"Charges and specifications alleging all known offenses by an accused *may* be preferred at the same time. Each specification shall state only one offense. What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." R.C.M. 307(c)(4) (emphasis added). "Ordinarily, all known charges should be tried at a single court-martial." R.C.M. 906(b)(10), Discussion.

> In the discretion of the convening authority, two or more offenses charged against an accused *may* be referred to the same court-martial for trial, whether serious or minor offenses or both, regardless [of] whether related. Additional charges may be joined with other charges for a single trial at any time before arraignment if all necessary procedural requirements concerning the additional charges have been complied with. After arraignment of the accused upon charges, no additional charges may be referred to the same trial without the consent of the accused.

R.C.M. 601(e)(2) (emphasis added). "The military justice system encourages the joinder of all known offenses at one trial." *United States v. Simpson*, 56 M.J. 462, 464 (C.A.A.F. 2002) (footnote omitted) (citing R.C.M. 601(e)(2), *Manual for Courts-Martial, United States* (2000 ed.)). This preference does not create an entitlement. *See United States v. Booker*, 62 M.J. 703, 707 (A.F. Ct. Crim. App. 2006).

Article 33, UCMJ, 10 U.S.C. § 833, addresses non-binding guidance for decisionmakers when it comes to making charging decisions:

> The President shall direct the Secretary of Defense to issue . . . non-binding guidance regarding factors that commanders, convening authorities, staff judge advocates, and judge advocates should take into account when exercising their duties with respect to disposition of charges and specifications in the interest of justice and discipline . . . .

This policy of the non-binding disposition guidance outlines several factors for decision makers to consider "and to further promote the purpose of military law." *See MCM*, App. 2.1, ¶ 1.1.a, at A2.1-1 (where this appendix supplements the *MCM* and provides disposition factors for decision makers to consider, "but does not require a particular disposition decision or other action in any given case").

### 3. Analysis

Appellant advances the argument that he is entitled to joinder of offenses at one court-martial. We analyze this issue for plain error, because Appellant did not object or move to dismiss on the basis of having been tried for other

offenses while this offense was known by the Government. According to his unsworn statement in his second presentencing hearing, Appellant knew he was under investigation for possession of child pornography before his first court-martial. If he had wanted to be tried for possession of child pornography videos at the time when he was tried for indecent recording and broadcasting, the best time to articulate that perspective would have been prior to arraignment at his first trial. But that trial result and the appellate review are now final and are not before us.

Here, the Government chose not to prefer or refer all known offenses to the same court-martial. *See* R.C.M. 307(c)(4); R.C.M. 601(e)(2). From a review of the record, it appears the Government had not completed its investigation into the Article 134, UCMJ, offense at the time other charges were referred to Appellant's first court-martial. In order to convict Appellant of possession of child pornography, as charged in this case, the Government was required to prove that at or near Kadena AB, Japan, between 17 February 2017 and on or about 31 March 2020: (1) Appellant knowingly and wrongfully possessed child pornography; and (2) under the circumstances, the conduct was of a nature to bring discredit upon the armed forces. *See* 10 U.S.C. § 134; *MCM*, pt. IV, ¶ 95.b.(1). Appellant may not be convicted of possession of child pornography "if he was not aware that the [videos] were of minors, or what appeared to be minors, engaging in sexually explicit conduct. Awareness may be inferred from circumstantial evidence, such as the name of a computer file or folder . . . and the number of [videos] possessed." *MCM*, pt. IV, ¶ 95.c.(5). Further, "[A]ny facts or circumstances that show that a visual depiction of child pornography was unintentionally or inadvertently acquired are relevant to wrongfulness . . . ." *MCM*, pt. IV, ¶ 95.c.(12). The Government knew of the potential offense of possession of child pornography, but, evidently, was not prepared to prove at that time that Appellant knew that he possessed child pornography and knew it was wrongful beyond a reasonable doubt.

Furthermore, the known offense of possession of child pornography videos was not an offense that was substantially one transaction with the convicted offenses of indecent recording and broadcasting of a specific adult in Appellant's first court-marital. *See* R.C.M. 307(c)(4). Appellant's possession of child pornography videos was discovered as a result of the investigation into allegations of indecent recording of an adult, but the child pornography videos were independent from that original investigation.

The purposes of military justice and discipline include promoting efficiency and effectiveness. *MCM*, Pt. I, Preamble, ¶ 3. The Government could have waited until the investigation into the possession of child pornography videos was completed before referring all charges to the same court-martial. *See Simpson*, 56 M.J. at 464. However, there is no requirement the Government

do so. *See Booker*, 62 M.J. at 707; *see also* R.C.M. 307(c)(4) (stating "[c]harges and specifications alleging all known offenses by an accused *may* be preferred at the same time" (emphasis added)). Further, the record before us does not indicate whether "all necessary procedural requirements concerning the additional charges [had] been complied with" for joinder of offenses. R.C.M. 601(e)(2). Finally, we do not find evidence in the record indicating the Government intentionally delayed prosecuting Appellant for the purpose of conducting a separate trial in order to increase its chances of obtaining a greater sentence.

Therefore, we do not find the Government plainly erred in this case by referring the Article 134, UCMJ, charge to a court-martial separate from the offenses tried at his previous court-martial. Thus, Appellant failed to meet the first prong of the plain error analysis. *Gomez*, 76 M.J. at 79 (citation omitted). This failure is fatal to the remainder of his plain error claim. *Id.*

## B. Ineffective Assistance of Counsel

Appellant asserts his trial defense counsel were ineffective when they withdrew an objection to the Government striking the words "within his iCloud account" from the merged specification. The Government disagrees. After thoroughly reviewing this issue anew, we find Appellant has not met his burden. Appellant's trial defense counsel were not ineffective.

### 1. Additional Background

Initially, Appellant was charged with two specifications of possession of videos of child pornography in violation of Article 134, UCMJ. The primary difference between the two specifications was the charged timeframe. The first specification (Specification 1) included possession "between on or about 17 February 2017 and on or about 31 December 2018." The second specification (Specification 2) included possession "between on or about 1 January 2019 and on or about 22 October 2019." After arraignment, but prior to Appellant's pleas, the trial defense counsel moved to merge the specifications for findings.[5] The Government did not oppose. The trial judge then granted the defense motion for merger for purposes of findings. At this point, the merged specification incorporated the entire charged timeframe from both Specifications 1 and 2.

The Government then moved to make four changes to the merged specification. Of the four proposed changes, the Defense had no objection to three. First, the Government moved to strike "on or about" before the first date of the charged timeframe, 17 February 2017. Second, the Government moved to

---

[5] The Government's bill of particulars identified that the same evidence would be used to prove up both specifications of violating Article 134, UCMJ.

strike the end date, "22 October 2019," and replace it with a new end date, 31 March 2020. Third, the Government moved to make singular the word "minors" to instead reflect the words "a minor, or what appears to be a minor." With no objection from the trial defense counsel, the military judge granted these government changes to the merged specification.

The Government's fourth requested change was to strike through the words "within his iCloud account." The Defense objected on the basis that this change was not a minor change. The following exchange then occurred between the military judge (MJ) and the circuit defense counsel (CDC).

> MJ: Okay. Let me ask you a couple of questions.
>
> CDC: Yes, Your Honor.
>
> MJ: First question, do you agree, if I was to agree with you, that the [G]overnment could then come back and recharge your client without that language and it would not be double jeopardy,[6] because as it is right now it's specific as far as it's within the iCloud account. So[,] I have no clue what's going to happen in this court, but let's say for whatever reason[,] I was to find your client not guilty. They have chosen to charge him specifically ["]within his iCloud account.["] If they chose to charge him without that[,] what is your position on that? And do you need a moment? And do you need a recess?

After a short recess, the parties reconvened and the Defense answered the trial judge's questions as follows:

> CDC: Defense is not objecting -- withdraws its objection to the proposed change by the [G]overnment.

Based on Appellant's claim that his trial defense counsel were ineffective when they did not object to the change in the specification, and in response to the Government's motion to compel declarations from trial defense counsel, this court, on 29 August 2024, ordered trial defense counsel to provide declarations responsive to this claim. On 20 September 2024, the court attached two declarations to the record.[7] Major (Maj) SH was the circuit defense counsel and

---

[6] U.S. CONST. amend. V.

[7] Statute directs the court to review "the entire record" when fulfilling its duties. Article 66(d)(1), UCMJ; 10 U.S.C. § 866(d)(1). Our superior court has recognized the court's ability to supplement the record in resolving issues raised in the record, but not fully resolvable, including claims of ineffective assistance of counsel (IAC). *United States v. Jessie*, 79 M.J. 437, 445 (C.A.A.F. 2020). We consider the trial defense counsel's declarations to help us resolve Appellant's claims of IAC, accordingly.

Maj EJ was the area defense counsel. Both represented Appellant at his second court-martial. Their declarations are substantively the same and explain the strategic reasoning behind their decision to withdraw the objection.

Maj SH explained that the withdrawal of the objection was made after full discussion with Appellant, and with his consent. The location of the files did not change the theory of their case, which was that the possession was unknowing. Further, the withdrawal "ensured finality." If acquitted, Appellant's acquittal "would increase the likelihood that double jeopardy would fully attach to the entirety of the evidence in the possession of the United States." Finally, Maj SH explained, due to the consultation with their confidential expert consultant, the trial defense team was aware of evidence the Government possessed which was "inflammatory and extremely inculpatory." If the Government had more time to prepare, and potentially charge this offense again, "a guilty finding was all but a foregone conclusion with greater sentencing exposure." Maj EJ's declaration was consistent with Maj SH's. She added, "Since this was already the [G]overnment's second prosecution of [Appellant], there appeared to be a risk that the [G]overnment could try again under a different theory if it did not like the findings or sentencing outcome of the court-martial."

### 2. Law

#### a. Standard of Review

We review claims of ineffective assistance of counsel (IAC) de novo. *United States v. Palik*, 84 M.J. 284, 288 (C.A.A.F. 2024) (citing *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007)).

#### b. Ineffective Assistance of Counsel

To prevail on a claim of IAC, Appellant must demonstrate: "(1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *Id.* (quoting *United States v. Captain*, 75 M.J. 99, 101 (C.A.A.F. 2016)). Appellant must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

We use a three-part test to analyze whether a claim of IAC has overcome this presumption of competence:

> (1) [Is] Appellant's allegation[ ] true; if so, "is there a reasonable explanation for counsel's actions;"
>
> (2) If the allegation[ is] true, did defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers?" [and]

(3) If defense counsel [were] ineffective, is there a "reasonable probability that, absent the errors," there would have been a different result?

*Palik*, 84 M.J. at 289 (omission in original) (quoting *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011)) (additional citation omitted).

### c. Changes to Charges and Specifications

"A major change is one that adds a party, an offense, or a substantial matter not fairly included in the preferred charge or specification, or that is likely to mislead the accused as to the offense charged." R.C.M. 603(b)(1). "A minor change in a charge or specification is any change other than a major change." R.C.M. 603(b)(2). "Minor changes include those necessary to correct . . . slight errors." R.C.M. 603(b)(2), Discussion.

"After referral, a major change may not be made over the objection of the accused unless the charge or specification is withdrawn, amended, and referred anew." R.C.M. 603(d)(1). After arraignment, the trial judge "may, upon motion, permit minor changes in the charges and specifications at any time before findings are announced if no substantial right of the accused is prejudiced." R.C.M. 603(e).

In one case, our superior court found a major change where "it altered the means of committing the offense and that change was not fairly included in the original specification." *United States v. Reese*, 76 M.J. 297, 300 (C.A.A.F. 2017). However, under the right circumstances, "changing the means by which a crime is accomplished may also constitute a slight error." *Id.* (citation omitted)

### 3. Analysis

Applying the three-part test to Appellant's assignment of error, we start with the first part: is Appellant's allegation true? That is, did his trial defense counsel withdraw an objection to the Government's striking of the words "within his iCloud account?" The record reflects Appellant's trial defense counsel did, in fact, withdraw an objection to the Government's proposed change to the merged specification before arraignment. Trial defense counsel's objection was articulated as an objection based upon the theory that the Government's proposed edit was a major change. Without ruling on the Government's proposed edit, or trial defense counsel's objection, the trial judge asked the trial defense counsel a question. The trial judge offered that if he agreed with the Defense, and sustained the objection, what did trial defense counsel believe might be the Government's next move? Instead of specifically answering that question, the defense team requested a recess, which the trial judge granted. Upon reconvening, the trial defense counsel withdrew their objection.

Finding the allegation is in fact, true, we turn to the remainder of the first part: is there a reasonable explanation for counsel's actions? We consider the attached trial defense counsel declarations because the record does not expose trial defense counsel's rationale behind their decision. The declarations of Appellant's trial defense counsel explain their strategic decisions behind the withdrawal of their objection to this change by the Government. First, they fully discussed this issue with Appellant, and ensured he understood their advice, and consented to the withdrawal of the objection. Second, they explained that whether the Government was required to prove the location of the evidence, within the iCloud account, did not impede their theory of the case, which was to attack the Government's ability to prove an essential element of the offense: knowing and wrongful possession. Third, and finally, they explained that they were aware the Government possessed additional evidence that would have proven challenging to Appellant's theory of defense that he did not know about the child pornography possession. Had the Government been aware of this additional evidence they already had, explained trial defense counsel, the Government could have and probably would have charged him again. This appears to have been a calculated risk assessment they, and Appellant, believed was in Appellant's favor. His trial defense counsel's strategic decision has multiple reasonable explanations. We find the first part of the three-part test is met, in counsel's favor.

Concluding the first part is met, subsequent analysis is not required. Nonetheless, we address the second part of the three-part test: if Appellant's allegation is true, as we have determined, did trial defense counsel's level of advocacy fall measurably below the performance ordinarily expected of fallible lawyers? Quite the opposite. We find the calculated risk assessment counsel made, with the advice and consent of their client, was intended to protect Appellant from potential future prosecution, compounding evidence of guilt and sentencing. Regardless of whether double jeopardy would have attached, we find the trial defense counsel's level of advocacy was exactly where it needed to be: zealously advocating for their client's best interests. They did not fall below the performance ordinarily expected of competent defense counsel. We find the second part of the three-part test is also satisfied, in trial defense counsel's favor.

We conclude counsel's performance was reasonable and fell within the performance ordinarily expected of trial defense counsel. *See Palik*, 84 M.J. at 289. Because Appellant has not met his burden on the first two parts of the three-part test, we need not address the third part, prejudice.[8] Because we do not

---

[8] Whether the Government's motion to strike through the words "within his iCloud account" was a major or minor change, was not determined at the trial level. Whether this change altered the means of committing the offense is not before us.

find trial defense counsel erred, we do not consider prejudice. Trial defense counsel were not ineffective. *Id.* at 288.

## C. Delay in Forwarding Appellant's Record to this Court

Appellant seeks relief due to the Government's "unexplained" delay in forwarding the record of trial (ROT) to this court by asking us to reduce his dishonorable discharge to a bad-conduct discharge. The Government disagrees the ROT processing delay is unexplained or was delayed such that relief should be granted. We find that no relief is warranted.

### 1. Additional Background

Appellant's charge of violating Article 134, UCMJ, was referred to a general court-martial on 22 March 2022. Appellant's sentence was announced on 27 October 2022. His appeal was docketed with this court on 8 June 2023. Consequently, 224 days transpired from sentencing to docketing.

On 17 November 2022, the convening authority signed the decision on action memorandum. On 6 December 2022, the trial judge signed the entry of judgment. On 4 January 2023, the court reporter certified the record of trial (ROT). On 22 March 2023, Appellant was served the ROT.

On 15 October 2024, the court granted the Government's Motion to Attach Declarations responsive to Appellant's claim of an "unexplained" docketing delay. The court attached two declarations, one from Captain (Capt) JH, the Chief of Legal Operations, assigned to the 18th Wing legal office (18 WG/JA), and one from Maj KB, the Chief of Military Justice, assigned to the 5th Air Force legal office (5 AF/JA) advising the general court-martial convening authority.[9] The declaration from 18 WG/JA included a chronology from sentencing to docketing.

Capt JH declared the assembly of the ROT took place between 5 January 2023 and 10 April 2023, which was 95 days. Initially, 18 WG/JA was creating a hardcopy ROT, but were then instructed to assemble an electronic ROT, which necessitated starting a new process. The office also spent a portion of this time attempting to obtain two sealed exhibits from OSI. Although 18 WG/JA was instructed to create an electronic ROT, the 5 AF/JA wanted a hard copy version for their quality review, which 18 WG/JA provided.

In her declaration, Maj KB explained that the ROT was forwarded by mail to 5 AF/JA on 10 April 2023 and then shipped back to the installation on 4 May 2023. 18 WG/JA mailed the ROT on 9 May 2023 to the Appellate Records

---

[9] We consider the Government's declarations to help us resolve Appellant's claim of docketing delay, which is not fully resolvable by the record. *See Jessie*, 79 M.J. at 445.

section of the Department of the Air Force's Military Justice Law and Policy division, located at Joint Base Andrews, Maryland. Appellate Records received it on 31 May 2023, conducted their review, and forwarded the ROT to the court on 8 June 2023.

### 2. Law

We review "de novo whether an appellant's due process rights are violated because of post-trial delay." *United States v. Livak*, 80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020) (citing *Moreno*, 63 M.J. at 135).

*Livak* established an aggregate sentence-to-docketing standard threshold of 150 days for facially unreasonable delay in cases like Appellant's, that were referred to trial on or after 1 January 2019. *Id.* (citing *Moreno*, 63 M.J. at 142). This threshold "appropriately protects an appellant's due process right to timely post-trial . . . review and is consistent with our superior court's holding in *Moreno*." *Id.*

*Moreno* applied four factors to consider whether there was a due process violation: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (citations omitted). Prejudice stems from three interests: (1) "prevention of oppressive incarceration pending appeal;" (2) "minimization of anxiety and concern;" and (3) impairment of the ability to present a defense at a rehearing. *Id.* at 138–39 (citations omitted).

Where an appellant has not shown prejudice from the delay, we cannot find a due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

### 3. Analysis

We have applied the *Livak* standard in Appellant's case de novo. *Livak*, 80 M.J. at 633. The *Livak* standard is one part of the total *Moreno* standard. If a case does not make the *Livak* aggregate sentence-to-docketing threshold of 150 days, this period constitutes a facially unreasonable post-trial delay. *Id.*

We considered the four factors identified in *Moreno*. First, we find there is a delay that exceeds the 150-day threshold by 74 days, which weighs in Appellant's favor.

Second, the reasons for the delay are varied. The convening authority's decision on action memorandum was signed 28 days after sentencing. The court reporter certified the record of trial 68 days after sentencing. Appellant received the ROT 146 days after sentencing. This processing is efficient and in line with the 150-day sentencing-to-docketing threshold. However, the

Government's declarations and chronology indicate 95 days were taken to assemble two versions of the ROT, a hard copy and an electronic copy. They also indicate that 5 AF/JA performed a review of the hard copy after it was mailed to them. After taking almost 30 days to perform the review, they mailed it back to 18 WG/JA. After making the requisite corrections, 18 WG/JA mailed the ROT to the Appellate Records section. This portion of the timeline could have been more efficient. We find it weighs in Appellant's favor.

Third, not until Appellant's initial brief to this court does he assert timely *Livak* review, which weighs against him. His argument for prejudice is, in part, predicated on his first assignment of error, that he was unnecessarily prosecuted in a second court-martial, foreclosing the possibility of concurrent confinement terms. Appellant also advocates particularized anxiety and concern in his brief, by pointing to his unsworn statement at trial. These arguments are not persuasive, and weigh against Appellant.

On balance, we do not find a due process violation. *Livak*, 80 M.J. at 633. Further, we do not find the delay egregious. *Toohey*, 63 M.J. at 362.

Recognizing our authority under Article 66(d), UCMJ, 10 U.S.C. § 866(d), we have also considered whether relief for excessive post-trial delay is appropriate even in the absence of a due process violation. *See Tardif*, 57 M.J. at 224 (citation omitted). After considering the factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we conclude it is not.

**D. Timeliness of Appellate Review**

**1. Law**

"[C]onvicted service members have a due process right to timely review and appeal of courts-martial convictions." *Moreno*, 63 M.J. at 135 (citing *United States v. Toohey*, 60 M.J. 100, 102 (C.A.A.F. 2004)); *Diaz v. Judge Advocate General of the Navy*, 59 M.J. 34, 37–38 (C.A.A.F. 2003)). Whether an appellant has been deprived of his due process right to speedy post-trial and appellate review, and whether constitutional error is harmless beyond a reasonable doubt, are questions of law we review de novo. *United States v. Arriaga*, 70 M.J. 51, 56 (C.A.A.F. 2011) (citing *Moreno*, 63 M.J. at 135).

A presumption of unreasonable delay arises when appellate review is not completed, and a decision is not rendered within 18 months of the case being docketed. *Moreno*, 63 M.J. at 142. A presumptively unreasonable delay triggers an analysis of the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (additional citations omitted). *Moreno* identified three

types of prejudice arising from post-trial processing delay: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of a convicted person's grounds for appeal and ability to present a defense at a rehearing. *Id.* at 138–39 (citations omitted).

"We analyze each factor and make a determination as to whether that factor favors the Government or the [A]ppellant." *Id.* at 136 (citation omitted). Then, we balance our analysis of the factors to determine whether a due process violation occurred. *Id.* (citing *Barker*, 407 U.S. at 533 ("Courts must still engage in a difficult and sensitive balancing process.")). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id.* (citation omitted). However, where an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *Toohey*, 63 M.J. at 362.

"[A] Court of Criminal Appeals has authority under Article 66[, UCMJ, 10 U.S.C. § 866,] to grant relief for excessive post-trial delay without a showing of 'actual prejudice' within the meaning of Article 59(a), [UCMJ, 10 U.S.C. § 859(a),] if it deems relief appropriate under the circumstances." *Tardif*, 57 M.J. at 224 (citation omitted).

The following factors are to be considered to determine if relief under *Tardif* is appropriate:

> 1. How long did the delay exceed the standards set forth in [*Moreno*]?
>
> 2. What reasons, if any, has the government set forth for the delay? Is there any evidence of bad faith or gross indifference to the overall post-trial processing of this case?
>
> 3. Keeping in mind that our goal under *Tardif* is not to analyze for prejudice, is there nonetheless some evidence of harm (either to the appellant or institutionally) caused by the delay?
>
> 4. Has the delay lessened the disciplinary effect of any particular aspect of the sentence, and is relief consistent with the dual goals of justice and good order and discipline?
>
> 5. Is there any evidence of institutional neglect concerning timely post-trial processing, either across the service or at a particular installation?
>
> 6. Given the passage of time, can this court provide meaningful relief in this particular situation?

*United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015) (citations omitted), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016). In consideration of the above factors, "no single factor [is] dispositive, and a given case may reveal other appropriate considerations for this court in deciding whether post-trial delay has rendered an appellant's sentence inappropriate." *Id.* (footnote omitted).

### 2. Analysis

Appellant's case was docketed with the court on 8 June 2023. The delay in rendering this decision after 8 December 2024 is presumptively unreasonable. The reasons for the delay include the time required for Appellant to file his brief on 13 August 2024, the Government to file its answer on 15 October 2024, and Appellant to file his reply brief on 22 October 2024.[10] Appellant has made no specific assertion of the right to timely appellate review, nor claim of prejudice on this issue, and we find none. Because we find no particularized prejudice, and the delay is not so egregious as to adversely affect the public's perception of the fairness and integrity of the military justice system, there is no due process violation. *See id.*

We also conclude there is no basis for relief under Article 66(d)(2), UCMJ, or *Tardif*, in the absence of a due process violation. *See Gay*, 74 M.J. at 744. Considering all the facts and circumstances of Appellant's case, we decline to exercise our Article 66(d), UCMJ, authority to grant relief for the delay in completing appellate review.

### III. CONCLUSION

The findings and the sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d).

---

[10] Appellant filed 12 motions for enlargement of time (the last enlargement request was for 12 days), all of which were opposed by the Government. Appellant's claim of ineffective assistance of counsel led the Government to request an order for defense counsel declarations, which we granted. In conjunction with their motion for defense counsel declarations, the Government also filed a motion for an enlargement of time, which we granted.

Accordingly, the findings and the sentence are **AFFIRMED**.



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court